THE BERLIN IRON BRIDGE COMPANY *vs.* THE CONNECTICUT RIVER BANKING COMPANY ET AL.

First Judicial District, Hartford, January Term, 1904.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

General Statutes, § 836, provides that no assignment of future "earnings" shall be valid against an attaching creditor of the assignor, unless certain steps are taken. *Held* that the word "earnings" was used in the ordinary, popular sense, as synonymous with "wages," and therefore the statute had no application to an assignment by a contractor of moneys which were to be paid to him under his contract, as the work progressed.

Subcontractors gave an order upon the contractor for "$1,000, and whatever more moneys may be due us upon our completion of contract at Hamilton Street bridge." *Held* that this covered not only what might become due under the contract, but for extra work as well.

Argued January 12th—decided March 3d, 1904.

ACTION of interpleader, brought to the Superior Court in Hartford County and tried to the court, *Shumway, J.;* facts found and judgment rendered awarding the fund to the Connecticut River Banking Company, from which other claimants appealed. *No error.*

*Seymour C. Loomis,* for the appellants (the Fidelity and Casualty Co. et al).

*Arthur F. Eggleston* and *John H. Buck,* for the appellee (the Connecticut River Banking Co.).

TORRANCE, C. J. The plaintiff, the Berlin Iron Bridge Company, hereinafter called the Bridge Company, has in its hands a fund amounting to $1,063.10, which it is ready and willing to pay over to the person legally entitled to it. Said fund is the balance due the defendants, Harrison and Sons, from the Bridge Company. One of the defendants, the Connecticut River Banking Company, hereinafter called the Banking Company, claims the fund by virtue of an assignment, and an order, made by the Harrisons in its favor; while another of the defendants, the Fidelity and Casualty Company, hereinafter called the Casualty Company, claims the fund under a suit and attachment proceedings brought by it against the Harrisons, in which the Bridge Company was made garnishee.

As upon the facts found we think the entire fund belongs either to the Banking Company or to the Casualty Company, it will be unnecessary to consider the claims of the other defendants in the case, as their claims are all subordinate to those of the two defendants above named.

The assignment and the order were made and perfected before the attachment was made; but the Casualty Company claims that they are invalid as against the attachment, because they purport to assign future earnings, and were not made in the manner prescribed by the statute (§ 836) relating to the assignment of such earnings. In other respects the validity of the assignment and the order is not questioned by

any one, nor is the right of the Casualty Company to the entire fund questioned, if the assignment and the order are invalid as against its attachment.

The main question in the case, then, is whether the assignment and order in question fell within the provisions of our statute relating to the assignment of future earnings. The controlling facts bearing upon this question are these. In September, 1898, the Bridge Company entered into a written contract with the city of Hartford, to build a bridge over Park River in said city, called the Hamilton Street bridge, for the sum of $17,450. This sum was to be paid " in monthly installments of 80 per cent of completed work, as estimated " by the city engineer ; " and the balance when said bridge " should be completed and accepted by the city. Subsequently, during the same month, the Bridge Company sublet a part of this work to the defendants, the Harrisons, by written contract, for the sum of $4,000. This sum was to be paid " in monthly installments covering 80 per cent of the work done and materials furnished during the preceding months, as determined by the estimates of the city engineer of Hartford ;" and the balance of 20 per cent was to be paid on the completion of the work sublet and its approval by the city of Hartford.

On the 12th day of November, 1898, the Banking Company loaned to the Harrisons $1,000, taking as evidence thereof their note of that date for $1,000, payable to the order of the Banking Company eighteen days after date. On the same day, to secure said note, or any renewals thereof, the Harrisons made a written assignment to the Banking Company of " the several sums of money and the amount thereof, due and to become due " to them from the Bridge Company, " for work done and to be done " under the contract between them and the Bridge Company. This assignment was on the 30th day of November, 1898, recorded " in the land records of the town of Hartford." The loan has never been paid, and the Banking Company still holds the note which was given in renewal of the first one. Notice of this assignment and a copy thereof were given to the Bridge Company on the 5th

day of December, 1898. On the 30th day of November, 1898, the Harrisons also gave to the Banking Company, to secure said loan, a written order of that date upon the Bridge Company, the material parts of which read as follows: "Please pay to the Connecticut River Banking Company, one thousand dollars ($1,000), and whatever more moneys may be due us upon our completion of contract at Hamilton St. Bridge." This order the Bridge Company on or about December 5th, 1898, accepted and agreed to pay. Before the Bridge Company had notice of the assignment, or had accepted the order aforesaid, it had paid to the Harrisons, under its contract with them, the sum of $3,000 as follows: on October 25th, $2,500, and on December 2d, $500. When this last payment was made, the value of the work done and materials furnished by the Harrisons under their contract was $3,650, and 80 per cent of this was $2,920. The balance of the work done under the contract was done after December 2d, 1898, and was completed and approved by the city on or about July 10th, 1899. On the 10th of July, 1899, the total amount due to the Harrisons from the Bridge Company was $1,063.10. This is the fund in the case. It includes, besides the amount due under the contract, the sum of $134.25 for extra work outside of the contract, done by the Harrisons on said bridge for the Bridge Company in December, 1898.

The claim of the Casualty Company to this fund is twofold: (1) If the assignment and order are invalid it claims the entire fund; (2) if they are valid, then it claims the amount due to the Harrisons for extra work, on the ground that neither the assignment nor the order covers or includes that amount.

The question whether the Casualty Company is entitled to the entire fund will be first considered. The statute (§ 836) under which the Casualty Company questions the validity of the assignment and order reads as follows: "No assignment of future earnings shall be valid against an attaching creditor of the assignor unless made to secure a *bona fide* debt due at the date of such assignment, the amount of which shall be stated therein as nearly as the same can be ascer-

tained, nor unless the term for which such earnings are assigned shall be definitely limited in the assignment; nor unless such assignment shall be recorded before such attachment in the town clerk's office in the town where the assignor resides, or, if he reside without the State, in the town where the employer resides, and a copy thereof left with the employer from whom the wages are to become due." The statute first appeared in this form in 1878 (Public Acts of 1878, Chap. 4), and it has remained unchanged in form upon the statute book ever since. In the Revision of 1888 it appears as § 1247, and in that of 1902 as § 836. The first Act regulating the assignment of "future earnings" was passed in 1874. Public Acts of 1874, Chap. 12. It provides in substance "that no assignment of future earnings shall be good and valid," unless recorded as therein provided within forty-eight hours after its execution. In the Revision of 1875 it was provided that "no assignment of future earnings shall avail to prevent their being attached, as a debt due to the assignor, when earned," unless it should be recorded as therein provided within forty-eight hours after its execution. Revision of 1875, p. 409, § 38. In 1876 it was provided that no such assignment should avail as against an attaching creditor, unless it should be recorded as therein provided; "before the service of process upon the garnishee." Public Acts of 1876, Chap. 25. After this came the Act of 1878, above mentioned, putting the statute into its present form.

Assuming that the assignment and order in suit do not comply with the provisions of the statute, the important question is whether the statute applies to a case like the present; and that turns upon the meaning of the words "future earnings," as they are used in this statute. The question is whether the word "earnings" in the statute means mere "wages," or whether it is used with a wider meaning, so as to embrace the compensation to be paid to the Harrisons by the Bridge Company under the contract between them which is here in question. The words "earnings" and "wages" have no fixed, definite, legal meaning. In common speech

"wages" ordinarily mean the compensation paid to a hired person for labor or services by the day, week, or other subdivision of time ; while the word "earnings" has often the wide meaning of that which is earned, or the narrower meaning of money or property gained or merited by labor or service, or the performance of something. See these words as defined in the Century Dictionary, in Webster's, and in Anderson's Law Dictionary. In the narrower meaning of the word "earnings," above given, it may include not only wages in the above sense, but also compensation for materials furnished, and expenditures made, in connection with the labor or services rendered. Quite frequently, too, the word "earnings," is used as synonymous with the word "wages," in the ordinary acceptation of that word. We think it is so used in the statute here in question. That statute provides, in cases where it is applicable, that a copy of the assignment of "future earnings" made under it, shall be "left with the employer from whom the wages are to become due." The language quoted shows that the Act was never intended to cover cases like the one at bar. In no proper sense was the Bridge Company the "employer" of the Harrisons, nor was the contract price to be paid to them "wages." Moreover, the use of the words "employer" and "wages" at the end of the Act clearly indicates that the legislature used the word "earnings" at the beginning of the Act as synonymous with the word wages in its ordinary acceptation. Looking at the Act as a whole, we are of opinion that the assignment and order in question did not come within its provisions, and consequently that they are valid as against the attachment.

The next question is whether the assignment and the order cover the entire fund, including the sum due for extra work, or only the amount due for work done under the written contract. The language of the assignment descriptive of the thing assigned, is this : "the several sums of money and the amount thereof, due and to become due to us from" the Bridge Company, "being for work done and to be done by us in pursuance of" the written contract between the Harri-

sons and the Bridge Company; while the language of the order descriptive of its amount is this: "one thousand dollars ($1,000), and whatever more moneys may be due us upon our completion of contract at Hamilton St. Bridge."

Assuming that the assignment covers only the amount due and to become due under the contract, we think the order covers that and the extra work also; for, in effect, it is for all money that may be due to the Harrisons at the time the contract is completed and the work accepted.

By accepting and agreeing to pay the order, we think the Bridge Company agreed to pay to the Banking Company all the money that would be due to the Harrisons from the Bridge Company at the time the contract work was completed and accepted.

The Casualty Company seems to claim that the evidence did not warrant the court in finding that the Bridge Company had received notice of the assignment, or had accepted the order; but the record does not sustain that claim.

The trial court did not err in holding that the Banking Company was entitled to the entire fund, and in effect overruling all the Casualty Company's claims of law to the contrary.

The other errors assigned in the reasons of appeal relate to the refusal of the court to correct the finding in a few particulars, and to the rulings upon evidence.

In the view we have taken of the statute relating to the assignment of future earnings, all of the reasons of appeal founded upon the refusal of the court to correct the finding, and most of those relating to the rulings upon evidence, become of no importance, and require no consideration; and of the very few other rulings upon evidence of which complaint is made, it is enough to say that they were either correct or harmless and do not merit separate consideration or discussion.

There is no error.

In this opinion the other judges concurred.