[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE FIRST COUNT
Plaintiffs have appealed from the Defendant East Windsor Planning and Zoning Commission's (Commission) site plan and special permit approval of Defendant National Amusements, Inc.'s (National) application for a twelve-screen indoor movie theater. The court permitted the introduction of evidence at the hearing on this bifurcated action.
Facts
The Defendant Northeast Land Development Trust (Northeast) owns a 50-acre tract of land located on the westerly side of Prospect Hill Road (Conn. Route 5) at its intersection with Bridge Street (Conn. Route 140) in the Town of East Windsor. This property is in a Business 1 zone (B-1). Indoor movie theaters are a permitted use by special permit in a B-1 zone.
National contracted with Northeast to buy 27 acres of this site contingent upon special permit and site plan approval of its proposed theater complex.
On October 24, 1989, National filed an application for site plan and special use permit approval for a fourteen (14) screen indoor movie theater.[1] The Commission held public hearings on the application on January 23 and February 13, 1990. Commissioners Karat, Gobin, Ceppetelli and Morrell and CT Page 27 Alternate Commissioner Muia were in attendance for the entire presentation at both hearings. Commissioner Grace did not sit for the January 23 hearing, but did attend the entire February 13 hearing.
The Commission took testimony and received written evidence at both hearings which included, inter alia:
 Site plans, architectural drawings, and technical data required by the application section of the Regulations; a detailed and complete traffic study and testimony about the proposed uses; testimony from a professional real estate appraiser; reports from East Windsor Police Chief, the Warehouse Point Fire Chief, and the Town Planning Consultant; and evidence that National had obtained an Inland-Wetland permit from the Conservation Commission. At the start of the January 23, 1990 hearing the number of theater screens was reduced from fourteen (14) to twelve (12). Some residents spoke in favor and some spoke against the application. The public hearing was closed on February 13, 1990.
After the close of the public hearing on February 13, 1990, the Commission met on March 27, 1990 at a regularly scheduled meeting to consider the application. Commissioners Gobin, Grace, Ceppetelli, Karat and Morell and Alternate Commissioner Muia participated in the discussions and review of the application. Upon the call for a vote, Commissioners Karat, Morell and Ceppetelli voted in favor. Alternate Muia, although present and commenting favorably, did not vote. Commissioners Grace and Gobin voted against. The application was approved by 3-2 vote. Notice of the Commission's action was legally published on April 3, 1990.
Beginning at least as early as 1962, Commissioner Ceppetelli was a town employee. As of February of 1966 his pay was referred to as on "salary." He had been on such "salary" for some period of time before that. His job was Park and Recreation Director at the time of the vote.
On March 9, 1987 and for some time before that Ceppetelli was paid on an hourly basis. This continued through at least February 24, 1990. At all relevant times Ceppetelli's employment by the town was a matter of public record. The Town of East Windsor did refer to the hourly pay given to some of its employees as "salary." CT Page 28
On or about April 17, 1990, the Plaintiffs commenced the present action. The Plaintiffs Raymond and Judith H. McCarthy (McCarthys) have alleged statutory aggrievement under Conn. Gen. Stats. 8-8 and proven they are the owners of the property which abuts the land involved in the decision of the Commission. Plaintiffs Pamela R. and William F. Clemens III, Mona M. and Dana F. Hewey (Heweys), James E. Robbins (Robbins), Philip L. and Virginia A. Polycott (Polycotts) and Frances and Robert Morrison (Morrisons) claim classical aggrievement in that their specific personal and legal interests have been specifically and injuriously affected by the decision.
Law
I. Aggrievement
A. Re McCarthy
The plaintiffs Raymond and Judith H. McCarthy have alleged and proven that they own land abutting a portion of the land involved in the decision of the board and thus have proven themselves to be statutorily aggrieved persons under Conn. Gen. Statutes 8-8 (1).
B. Re non-abutting Plaintiffs
Frances and Robert Morrison have proven a specific personal intent in the subject matter of the decision, as distinguished from a general community interest. That personal interest has, or will be upon implementation, specifically and injuriously affected by the decision. The Morrisons have not proven a specific legal interest in the subject or the possibility that such legal interest has, or will be upon implementation, specifically and injuriously affected. Cannavo Enterprises, Inc. v. Burns, 194 Conn. 43,47. They have not shown "classical aggrievement" by evidence which this court found credible. They surely have not overcome the presumption that arose when we found the theater to be a permitted use, by special permit, in the zone. The presumption is that "such use does not adversely affect the district and precludes further inquiry into its effect on the traffic, municipal services, property values or the general harmony of the district." Beit Havurah v. Zoning Board of Appeals, 177 Conn. 440, 443. Cf. O'Neill v. Carolina Freight Carriers, 156 Conn. 613, 617-18.
None of the other non-abutting plaintiffs have proven classical aggrievement. CT Page 29
 II. Re Disqualification of Commissioner Ceppetelli
 A. Timeliness of Claim of Disqualifications
Plaintiffs had the right and the ability to know of Ceppetelli's job with the town from before notice of the hearings right through the date they filed this appeal. It was not until many days after the statutory appeal period had run that they sought to amend their appeal to claim that Ceppetelli was disqualified. It is too late for that claim. Chestnut Realty, Inc. v. HRO, 201 Conn. 350, 356.
B. Waiver
The court cannot find the voluntary relinquishment of a known right.
C. Substantive Claims
Wages are different than a salary. Local 63, Textile Workers Union v. Cheney Bros., 141 Conn. 606. For comparison we can look at the annual salaries of fire department members in Walsh v. Bridgeport, 88 Conn. 528, 532-533.
Although neither the word salary nor the word wages has a "fixed, definite, legal meaning", Berlin Iron Bridge Co. v. Connecticut River Banking Co., 76 Conn. 477, 481-482
(re wages), Walsh v. Bridgeport, supra 535 (re salary), wages are usually thought of as compensation paid for labor by a day, week or hour and salary as a "fixed compensation to be paid regularly for services." Silver v. Silver, 170 Conn. 305. 309 (interpretation of a decree).
Regardless of what exquisite distinctions might be found to exist among wages, salary, compensation, pay, recompense and earnings, it is evident that hourly pay (or wages) is not salary.
Even in the John W. Thompson classification study which consistently refers to "salary" in regard to all jobs[2]
the chart at page 11 makes it clear that hourly pay is different.
It is clear enough that in the town minutes and records presented to the court in this action the town used salary to mean, at least, both hourly and weekly compensation for its employees. The question is not what the town called its method of payment to its workers, but, rather, who did the state CT Page 30 legislature intend be kept off certain boards and commissions?
Conn. Gen. Stats. 8-19 for the period in question read, in pertinent part, as follows:
 Creation of planning commissions. Any municipality may create by ordinance a planning commission, which shall consist of five members, who shall be electors of such municipality holding no salaried municipal office and whose terms of office and method of election or appointment shall be fixed in the ordinance.
In May of 1990 the legislature amended 7-421 by passing what became Public Act 90-123(e). That Act became effective May 17, 1990. It reads as follows:
 (e) ANY MUNICIPAL EMPLOYEE SHALL HAVE THE RIGHT TO SERVE ON ANY GOVERNMENTAL BODY OF THE TOWN IN WHICH HE RESIDES, NOTWITHSTANDING THE PROVISIONS OF THE SUBSECTION, NO SUCH EMPLOYEE SHALL SERVE ON: (1) ANY SUCH BODY WHICH HAS RESPONSIBILITY FOR DIRECT SUPERVISION OF SUCH EMPLOYEE; (2) ANY BOARD OF FINANCE CREATED PURSUANT TO CHAPTER 106 OR ANY SPECIAL ACT OR MUNICIPAL CHARGER; (3) ANY BODY EXERCISING ZONING POWERS PURSUANT TO CHAPTER 124 OR ANY SPECIAL ACT OR MUNICIPAL CHARTER; (4) ANY BODY EXERCISING LAND USE POWERS PURSUANT TO CHAPTER 125a OR ANY SPECIAL ACT OR MUNICIPAL CHARTER; (5) ANY BODY EXERCISING PLANNING POWERS PURSUANT TO CHAPTER 126 OR ANY SPECIAL ACT OR MUNICIPAL CHARTER; OR (6) ANY BODY REGULATING INLAND WETLANDS AND WATERCOURSES PURSUANT TO CHAPTER 440 OR ANY SPECIAL ACT OR MUNICIPAL CHARTER, UNLESS SUCH EMPLOYEE IS PERMITTED TO SO SERVE PURSUANT TO THE PROVISIONS OF A MUNICIPAL CHARTER OR HOME RULE ORDINANCE.
Section 8-19 is contained in Chapter 126 of the Conn. General Statutes.
This new enactment is not applicable to Ceppetelli's actions prior to May 17, 1990. However, the 1990 amendment "clearly indicates an intention on the part of the legislature to overcome" the language of Conn. Gen. Stats. 8-19. Brown v. Cato, 147 Conn. 418, 421. "A subsequent legislative act may throw light on the legislative intent of a former related act." Hartford v. Suffield, 137 Conn. 341, 346. Here, it does.
Although almost all the statutes dealing with state employees refer to "salary", e.g. 5-154; 5-238b; and CT Page 315-246, the state does contemplate compensation based on an "hourly rate" in some circumstances. Conn. Gen. Stats.5-238a.
Ceppetelli was not a salaried municipal employee at the time of the hearing and his vote.
III. Delegation
Plaintiffs seek to void the Commission's action because it requires National to get various approvals from other agencies. They refer to those requirements as improper delegations.
In terms of logic and simple common sense, an applicant must first get its site plan and special permit approval before going to the engineer, the other jurisdictions, and the Water Pollution Control Authority (W.P.C.A.). The "conditions" must come after the Commission's approval.
Specifically they point to seven "conditions" in the Commission's approval which this court views through the prism of Blake v. Planning Zoning Commission, 212 Conn. 471.
Condition 1 is as follows:
 The retaining walls and subsequent regrading of the site shall be designed by a structural engineer registered in the State of Connecticut prior to the start of construction.
This is not a delegation of authority but rather a requirement.
Condition 4 is as follows:
 Any revisions to the site plan required by other jurisdictions shall be submitted to the Town for review and approval.
The court cannot read this as a new condition. It is simply a recitation of the law.
Condition 9 is as follows:
 "Any modification to the proposed drainage plan is subject to the approval of the Town Engineer."
This again is merely a recitation of a requirement but not an authorization for a modification. CT Page 32
Condition 10 is as follows:
 Prior to the issuance of a Certificate of Compliance, a traffic signal, as requested by the East Windsor Chief of Police, shall be installed at the intersection of the site driveway and Route 5, subject to final design approval by the State Department of Transportation.
This again is not a condition but a requirement that the traffic signal ordered to be installed comply with the designs required by the department of transportation. The only design approval allowed to that department is permitted by Conn. Gen. Stats. 14-298 which says, in pertinent part:
 The traffic authority of any city, town or borough may place and maintain traffic control signals, signs, markings and other safety devices upon the highways under its jurisdiction, and all such signals, devices, signs and markings shall conform to the regulations established by said commission in accordance with this chapter, and such traffic authority shall, with respect to traffic control signals, conform to the provisions of section 14-299.
Conn. General Statutes 14-299 specifically requires that the State Traffic Commission approve all installations or traffic control signals.
Condition 15 is as follows:
 No Zoning Permits shall be issued and no site work shall begin until the Water Pollution Control Authority grants a final sewage allocation to the project and has indicated approval of the sewer layout and plans.
This "condition" comes in two parts. The first is that the W.P.C.A. must grant "a final sewage allocation to the project." What does that mean? From D-11a of the Return of the Commission the court could find that "final sewer allocation" must be obtained prior to the issuance of any building permit to National. It could also find as a fact that National's project will not go forward if sewer capacity to handle the sewage anticipated from National's project does not become available. That "condition" is another requirement without which nothing happens. Just as the Commission has no power to order the W.P.C.A. to do something, the W.P.C.A. can do nothing except what the state statutes and ordinances of the town CT Page 33
No discretion is discussed or contemplated in this "condition." It is simply a question of when National gets its final sewage allocation.
The second part of Condition 15 is that WPCA must have "indicated approval of the sewer layout and plans." In contrast to situations like Farina v. Zoning Board of Appeals,157 Conn. 420, the W.P.C.A. does not have to make a judgment as to whether or not the sewer layout and plans are "suitable and adequate to handle the [sewage] generated by the . . . project." id. 423.
To issue the special permit here sought the Commission was required, inter alia, "to make a determination that . . .
Details of . . . the public sewage disposal system . . . must be installed and shall conform with [sic] accepted engineering standards and will comply with all criteria of the appropriate regulatory authority." Town of East Windsor Zoning Regulations 8A.91 and 6 (Exhibit A). The Commission also must be given a development plan which shows, inter alia, "provisions for . . . sewage disposal", supra 8A.82q. From this the court infers that that Commission had such "provisions" before it. The court also knows that "the projects [sic] Sewer Capacity Waiting List Status was renewed for another year at the W.P.C.A.'s October 17th [1982] meeting." Exhibit D-5(d). The project's place on that list as of January 4, 1990 was fourth. Exhibit D-4 at page 22.
At the Commission meeting of December 19, 1989 "Drawings CD-1 thru CD-11" prepared by John Meyers Consulting (Meyers) were submitted to the Commission. See Exhibit D-8 and also D-12(a). Exhibit D-4 is the Meyers' project book and on pages 22-23 sanitary sewers are discussed. On page 22 the reader is referred to "attached JMC Drawing No. CD-3 `Utilities Plan.'"
Exhibit D-17(c) is the CD-3 referred to in the Meyers' presentation. It shows, inter alia, both the existing and the proposed sanitary sewer layout and it constitutes the sanitary sewer plans.
Drawing CD-3 was revised on "11/30/89" (Exhibit D-12(a)) and on "1/09/90." Exhibit D-12(k). It was revised again "3/09/90." Exhibit D-12(m). None of those revisions affected the "sewer layout and plans." Exhibits D-12 and D-13. From this the court infers that the Commission had made the determination that the sanitary sewer layout and plans "conform [to] all accepted engineering standards and [when installed the sewers] will comply with all appropriate regulatory authority." CT Page 34 To make sure, quite naturally, the Commission sent the matter to W.P.C.A. for its finding that the sewers comply with W.P.C.A. regulations. That is not like the Farina (supra) situation in which the traffic authority was called upon to make a judgment of adequacy. W.P.C.A. is given no discretion in spite of the use of the word approval. It must simply determine mechanical compliance with its regulations. If there is compliance W.P.C.A. must give approval.
This is analogous to the rule binding a zoning commission that it "has no discretion or choice but to approve a subdivision if it conforms to the regulations adopted for its guidance." Reed v. Planning Zoning Commission, 208 Conn. 431,433.
Condition 16 is as follows:
 "No Zoning Certificates of Compliance shall be issued until the Water Pollution Control Authority has inspected and approved the sewer connection for the project."
The approach to this requirement is the same as Condition 15.
Condition 17 is as follows:
 "The applicant shall provide and maintain an on-site security service for the theaters and site. Such service shall have lock-out assistance available to customers to minimize any need for local police services."
The Commission is neither required nor expected to set forth in detail a staffing plan, personnel guides nor weapons-handling techniques. National must provide an on-site security service. Without it National cannot operate.
IV. Conditions not in Regulations
If any of the conditions are not required by the Zoning Regulations they are "void and of no force." Parish of St. Andrew's Church v. Zoning Board of Appeals, 155 Conn. 350,354.
V. Evaluation of Criteria
This court cannot decide whether or not the Commission was "right" or "wrong" but only if on the record it acted illegally or arbitrarily or abused its discretion. Frito-Lay, CT Page 35 Inc. v. Planning Zoning Commission, 206 Conn. 554, 572-573. The Commission had before it evidence from which it could decide the effect on the area of the traffic, lights, pollutants, noise, odor, and vibrations expected from the project. It also had a lot of evidence about values and use of the area properties. It had evidence about the adequacy and availability of sewage disposal and water supplies. With all of this before it the Commission made its decision. This "court may not substitute its judgment for the wide and liberal discretion vested in the local authority when acting within its prescribed legislative powers." Raybestos-Manhattan, Inc. v. Planning Zoning Commission, 186 Conn. 466, 469-470. This court finds nothing by way of omission or commission that would undermine the factual and legal base of the Commission's decision.
The burden of proof in this matter is on the plaintiffs. Scovil v. Planning Zoning Commission, 155 Conn. 12, 17-19. They have not sustained it.
Appeal dismissed.
N. O'NEILL, J.