[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE APPLICATION FOR TEMPORARY INJUNCTION
The plaintiff, which sells life, health, disability and accident insurance, annuities, mutual funds and other similar products to credit unions and their members in the State of Connecticut, seeks a temporary injunction restraining the defendant, a former employee, from engaging in similar business pursuits within the geographical area covered by his former employment. The defendant objected to such an injunction, and the court held a hearing on February 28, February 29 and March 5, 1996.
The court finds the following facts:
On January 4, 1993, the parties entered into an employment agreement which included a number of provisions relevant to the resolution of this issue. In the agreement, the defendant CT Page 3205 acknowledged that the plaintiff's business was highly competitive, relying on personal relationships and business contacts that would be developed during the course of his employment. He also acknowledged that the plaintiff corporation would be the sole instrumentality for arranging such contacts for him and that he would, during the course of his affiliation with the plaintiff, acquire secret and exclusive information concerning the plaintiff's business, its customer list, price structures, marketing, servicing and merchandising techniques, research and business operations. Indeed, the defendant testified that during his three years of employment, he had in fact developed such relationships and contacts and had acquired such information.
The employment agreement also included the following provisions specifically related to the defendant's covenant not to compete with the plaintiff after leaving its employ:
 "3(b) that he will not for a period of two (2) years, directly or indirectly enter into or engage in, or directly or indirectly, own, manage, operate, be employed by, act as independent contractor or Agent for, or be connected in any manner with any business endeavor which is engaged in the sale of insurance, annuity, or mutual fund products to credit unions situated within the Agent's Territory and/or their members, and which business endeavor is directly or indirectly in competition with the General Agent . . .
 "(c) that he will not for a period of two (2) years, directly or indirectly, for himself of for others, solicit the sale of any insurance, annuity or mutual fund products, of the nature and type sold by the General Agent, to any credit union situated within the Agent's Territory or its members, and with whom the Agent obtained or maintained business contact or a business relationship while affiliated with the General Agent, or with whom he conducted business in any manner as a result of or in furtherance of his affiliation with the General Agent, or about whom the Agent obtained access to the General Agent's information concerning such credit union or its members in the course of the Agents affiliation with the General Agent. CT Page 3206
 "(d) that the covenants set forth in paragraphs (b) and (c) of this Section 3 of this Agreement shall apply to all areas within the Agent's territory", which is elsewhere defined as all credit unions within the State of Connecticut."
The Agreement also stated the belief of the parties that under the circumstances, two years was a reasonable time, and the Agent's Territory was a reasonable area, but it specifically allowed for flexibility and adjustment in these particulars by providing, in Section 4(c) that:
 ". . . the parties hereto agree that if the maximum period of time that restrictive covenants may be enforced or the geographic extent to which they may be applicable, is less restrictive at the time this Agreement is sought to be enforced or litigation occurs with regard hereto, that the Courts of this State shall be the final arbitrator. It is the express intention and desire of the parties to this Agreement that, if it should appear that any of the terms or covenants hereof are in conflict with any rule of law or statutory provision of the State of Connecticut, which conflict would ordinarily render such terms or covenants inoperative and null and void, the parties request the Courts of this State to modify any such term or covenant so that the intention of the parties hereto is carried out to as great a degree and extent as the Court deems reasonable in order to conform with any rule of law or statutory provision governing restrictive covenants in the State of Connecticut. In the case where any restrictive covenant is deemed inoperative and or null and void, the parties shall submit themselves to the jurisdiction of the Courts of the State of Connecticut and intend that said Courts shall have the full and exclusive authority, power and control to modify any such covenant to conform with the intentions of the parties as set forth in this Agreement and with any rule of law statutory provisions governing restrictive covenants both in and out of the State of Connecticut. It is the belief of the parties hereof, however, as stated hereinabove, that the restrictive covenants as outlined herein are CT Page 3207 reasonable and represent the minimum protection for the General Agent herein."
The parties also provided for the possibility of an injunction such as that now being sought by the plaintiff:
 "5. Injunction. The Agent recognizes that irreparable injury will result to the General Agent, its business and property in the event of any breach of this Agreement by the Agent, and that his affiliation is based primarily upon the assurances made herein; so, therefore, the Agent agrees that the General Agent, in addition to any monetary damages or other remedies available to it, shall be entitled to an injunction to restrain the violation, threatened violation or compel the performance of any or all of the terms of this Agreement by the Agent, his servants, Agents, partners, or employer, or any and all persons acting for or with him. In the event that any such injunction shall issue, the Agent shall be responsible for all costs actually incurred by the General Agent in connection therewith, including reasonable attorney's fees . . ."
The plaintiff expended considerable effort and expense to promote the defendant as its representative during the period of his employment. These efforts included the distribution of thousands of copies of pamphlets that depicted the defendant's photograph as well as other kinds of advertising brochures. These activities focused on the membership of the Norwich Pequot Teachers Federal Credit Union, which has its principal offices in Norwich, East Lyme and Groton.
The employment agreement also included a provision that the plaintiff would not change its compensation agreement with the defendant without written mutual agreement. At one point during the earlier stages of the defendant's employment, there was such a change which was in fact reduced to writing. There was testimony that, toward the end of defendant's employment, the plaintiff had proposed yet another revision of the defendant's compensation scheme. The defendant did not approve of this proposed change, either orally or in writing. The defendant, however, tendered a letter of resignation on December 19, 1995, to become effective on January 5, 1996, and the proposed change in compensation never went into effect. CT Page 3208
Although the defendant claimed that the attempt to change compensation in alleged violation of the agreement's requirement of written approval voided the contract, including its covenant not to compete, it is apparent that no such change was effectuated and that the contract cannot be construed to have been voided on that account. Moreover, the Agreement itself states that the restrictive covenants shall be in full force and effect after the termination of the Agreement "regardless of the cause or reason for such expiration or termination."
Within two weeks of his departure from the plaintiff's employ, the defendant became affiliated with a competitor of the plaintiff called Main Street Management Company of Wallingford. Main Street promoted the defendant as its "registered" representative and caused promotional literature about Main Street, the defendant and their products to be circulated among teachers at various schools within the defendant's former sales territory. The defendant has also participated in on site activities in the schools promoting products similar to those marketed by the plaintiff.
The principal purpose of a temporary injunction "is to preserve the status quo until the rights of the parties can be finally determined after a hearing on the merits." Clinton v.Middlesex Mutual Assurance Company, 37 Conn. App. 269, 270
(1995). "A party seeking injunctive relief has the burden of alleging and proving irreparable harm and lack of an adequate remedy at law." Walton v. Town of New Hartford, 223 Conn. 155,165 (1992); Hartford v. American Arbitration Association,174 Conn. 472, 476 (1978). "The issuance of an injunction and the scope and quantum of injunctive relief rests in the sound discretion of the trier." Nair v. Thaw, 156 Conn. 445, 452,242 A.2d 757 (1968); Karls v. Alexandra Realty Corporation, supra;Dupuis v. Submarine Base Credit Union, Inc., 170 Conn. 344, 356,365 A.2d 1093 (1976).
"[T]he requirements for a temporary injunction are (1) establishing a legal right, which involves a determination of the probability of the plaintiff's succeeding on the merits and that there is no other adequate remedy at law; and (2) the imminence of a substantial and irreparable injury to the plaintiff, considered together with the effect of a temporary injunction on the plaintiff and the defendant . . . Where an injury is of such a nature that it cannot be adequately compensated in damages, or CT Page 3209 cannot be measured by any pecuniary standard, it is irreparable. Whether damages are to be viewed by a court of equity as irreparable depends more upon the nature of the right which is injuriously affected than upon the pecuniary measure of the loss suffered." Connecticut Association of Clinical Laboratories v.Connecticut Blue Cross, Inc., 31 Conn. Sup. 110, 113 (1973).
In Gartner Group, Inc. v. Mewes, 5 Conn. L. Rptr. 412
(Conn.Super. 1992), Judge Mottolese recognized the difficulty of quantifying damages in the case of a covenant not to compete:
 "While ordinarily proof of imminent irreparable harm is essential, in this type of case [for violation of a covenant not to compete] there is no such requirement. It has long been recognized in this state that a restrictive covenant is a valuable business asset which is entitled to protection. Torrington Creamery, Inc. v. Davenport, supra at 521. Irreparable harm would invariably result from a violation of the defendant's promises. Matis v. Lally, 138 Conn. 51, 56; Welles v. O'Connell, 23 Conn. Sup. 335, 337. The reason for this is that such a plaintiff's actual injury is not susceptible of determination to its entire extent but is estimable largely by conjecture and prediction. Case v. Zeiff, 10 Conn. Sup. 530, 532. The very nature of the defendant's conduct is such that its real impact will not be felt fully for several years in the future. In this case the defendant's competitive activities carried out within the year in question are likely to produce harmful effects in subsequent years in expanding geometric progression. As the court said in Gordocki v. Goldring Home Inspections, Inc., 6 C.S.C.R. 988 (November 18, 1991, Hodgson, J.) `while the [defendant] plaintiff could maintain a claim for damages as to each violation that causes injury the difficulty of proof and the inefficiency of repetitive suits render inadequate the use of successive remedies at law, and injunctive relief is therefore warranted to protect the defendant from harm which the restrictive covenant was intended to prevent. Berin v. Olson, 183 Conn. 337, 342.'"
Our Supreme Court has listed five criteria by which to evaluate the reasonableness of a covenant not to compete: (1) the length of time the restriction is to be in effect; (2) the CT Page 3210 geographical area covered by the restriction; (3) the degree of protection afforded to the interest of the party in whose favor the covenant is made; (4) the restrictions imposed on the employee's ability to pursue his occupation; and (5) the potential for undue interference with the interests of the public. Scott v. General Iron Welding Co., 171 Conn. 132, 137
(1976). The failure to pass any prong of this test may be sufficient to render the covenant unenforceable. New HavenTobacco Company v. Perrelli, 11 Conn. App. 636, 639 n. 2 (1987).
As for the first two prongs of this test, "[w]hen the character of the business and the nature of the employment are such that the employer requires protection for his established business against competitive activities by one who has become familiar with it though employment therein, restrictions are valid when they appear to be reasonably necessary for the fair protection of the employer's business or rights." Robert S. Weiss Associates, Inc. v. Wiederlight, 208 Conn. 525, 533 (1988)(two-year restriction limited to Stamford and a ten-mile radius surrounding Stamford); quoting May v. Young, 125 Conn. 1, 6-7
(1938). See, also, Scott v. General Iron Welding Company,supra, (five-year restriction, statewide, limited to participating in the management of a similar business); and NewHaven Tobacco Company, Inc. v. Perrelli, 18 Conn. App. 531
(1989), (two-year restriction limited to geographic area in which customers of plaintiff are located and only applied to customers defendant dealt with or discovered while defendant was employed).
 "[W]hen the character of the business and the nature of employment are such that the employer requires protection for his established business against competitive activities by one who has become familiar with it through employment therein, restrictions are valid when they appear to be reasonably necessary for the fair protection of the employer's business or rights."
Scott v. General Iron and Welding Company, 171 Conn. 132, 137 (1976).
It is clear from the testimony in this case that although the Agreement called for a covenant not to compete anywhere in the State of Connecticut, the defendant's actual territory was confined to the general area of New London County. Under these circumstances, to enjoin the defendant from working anywhere at all in the State would be inequitable, but the defendant also CT Page 3211 incorrectly suggests that unless the restrictive covenant can be applied as written, it may not be reformed by the court, and therefore may not be enforced at all.
In Torrington Creamery, Inc. v. Davenport, 126 Conn. 515,12 A.2d 780 (1914), the defendant agreed in his contract of employment that he would not compete with the plaintiff for two years after the termination of his employment. The court observed that the contract expressly stated it was severable and that the employer itself sought to enforce the restrictive covenant only in those towns where the defendant had special knowledge of the employer's customers. The court concluded that an injunction would be reasonable if it did not go beyond the less restrictive of either 1) the provisions in the contract itself or 2) what the trial court might deem reasonably necessary for the protection of the company's business.
In Gartner Group Inc. v. Mewes, 5 Conn. L. Rptr. 412, supra, the Court found that the restrictive covenant was overly broad in two major respects. However, the Court cited Beit v. Beit,135 Conn. 195 (1948), for the proposition that whether severance is appropriate depends primarily upon the intent of the parties as determined by a fair construction of the language they used. Referring to a paragraph similar to subsection (c) of Article 4 of the Agent's Agreement in this case, the Court stated, "It is obvious that the parties contemplated the very direction which this case has taken and have clearly and effectively provided for it." It therefore issued an injunction with judicial modifications consistent with the intent of the parties.
The plaintiff has indicated no objection to such a modification of the terms of the Agreement in this case. Plaintiff's Exhibit T, a map and list of institutions describing the primary territory covered by the defendant during the three years that he was employed by the plaintiff, represents the least restrictive geographical limitation on the defendant's employment possibilities consistent with the intent of the Agreement.
It is the general rule that competent persons shall have the utmost liberty of contracting and that their agreements, voluntarily and fairly made, shall be held valid and enforced in the courts. Collins v. Sears, Roebuck Co., 164 Conn. 369, 377
(1973). However, contracts which interfere with an individual's liberty of action must be examined to determine the reasonableness of such restraint in reference to the parties CT Page 3212 concerned and the general public. Samuel Stores, Inc. v. Abrams,94 Conn. 248 (1919).
Thus, the court must also examine the extent of the restraint on the employee's opportunity to pursue his occupation. As stated in Scott v. General Iron Welding Co., supra, 171 Conn. 137:
 "The interest of the employee himself must be protected, and a restrictive covenant is unenforceable if by its terms the employee is precluded from supporting himself and his family."
In this case, the restrictive covenant does not force the defendant to sacrifice his livelihood. He may work as a financial advisor throughout most of Connecticut and in any other state. He may also return, without penalty, to the area depicted in Exhibit T after January 5, 1998.
Finally, the court has considered the extent of any interference with the public's interest.
 "In determining whether a restrictive covenant deprives the public of essential goods and services, the reasonableness of the scope and severity of the covenant's effect on the public and the probability of the restriction's creating a monopoly in the area of trade must be examined." New Haven Tobacco Co v. Perrelli, 18 Conn. App. 531, 536 (1989).
In the present case the public interest will not suffer if the restrictive covenant is enforced. It is apparent that the plaintiff's business is highly competitive and will remain so even without the direct participation of the defendant in his former territory. The public will not be deprived of access to the kinds of goods and services offered by the plaintiff. Main Street may continue to compete for the plaintiff's business, but it may not do so using the services of the defendant, who specifically agreed not to engage in such competition.
The court finds that the plaintiff has met the requirements for a temporary injunction and that the restrictions to be placed on the defendant are reasonable ones. For all the above reasons, therefore, the application for a temporary injunction is granted to the extent that the defendant is prohibited from soliciting or conducting business relating to the marketing or sales of life, CT Page 3213 health, disability and accident insurance, annuities, mutual funds and other related products to credit unions or their members working in schools or other institutions specifically enumerated in plaintiff's Exhibit T.[1] If not modified sooner, this injunction will expire on January 5, 1998.
Jonathan E. Silbert, Judge