CATHERINE L. NAILOR *vs.* THE C. W. BLAKESLEE & SONS, INC.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued May 7th—decided July 18th, 1933.

*Philip Pond* and *George E. Hall,* for the appellant (defendant).

*Joseph Weiner,* with whom was *William Gitlitz,* for the appellee (plaintiff).

BANKS, J.   The plaintiff has owned since 1923 a two-family house on Gibb Street in New Haven which is in the center of a large industrial area zoned as an "industrial B district." There are railroad tracks about one hundred and fifty-four feet from the plaintiff's house, and about one hundred and seventy feet from Gibb Street opposite the house is the factory of the Winchester Repeating Arms Company, which owns the property east of the plaintiff and on the south side of Gibb Street.   In 1930 the defendant leased the premises occupied by it from the Winchester Company and began the operation of a plant for the manufacture of concrete.   The concrete manufactured by the defendant is a combination of stone, screened sand and cement in proportions of four of stone, two of sand and one of cement.   The stone is brought in trucks carrying three and a half tons and is dumped into a steel plate hopper.   From the hopper the stone and sand are carried on a conveyor belt and discharged into separate bins.   The cement comes by rail and is discharged from the cars by an electrically driven scraper into an underground screw conveyor and is then carried to a cement bin adjoining the bins for the stone and sand.   From

these bins the stone, sand and cement are discharged in the required proportions through a steel chute into a concrete mixer which is driven by gearing from a seventy horsepower motor. The barrel of the mixer is rotated and after the ingredients are mixed they are discharged through a chute into a barrel mounted on a motor truck and the truck is driven off, the barrel rotating on its axis.

The hopper into which the stone is dumped is located one hundred and six feet from plaintiff's house and the dumping of the stone into the hopper makes a penetrating and nerve affecting sound which can be heard in the plaintiff's house. Upon occasions concrete which has hardened in the barrel of the mixer or upon the ground is broken up in the early hours of the morning or late at night by an air drill which makes a very loud and nerve disturbing sound. The noise from the various operations of the defendant's plant has disturbed the plaintiff, her family and tenants until the late hours of the night, frequently as late as eleven p. m. The operations of the defendant's plant raise cement and stone dust which is carried into the plaintiff's house and upon the walls, furniture and curtains, and the plaintiff has been obliged to keep the windows of the rooms facing the defendant's premises closed during the summer months. Before the defendant erected its plant the plaintiff rented her rooms for $35 a month. From July, 1930, to October, 1932, the rooms were vacant one-third of the time, and she has reduced the rental to $20 a month and has paid for the laundering of all linens, curtains and tablecloths in order to keep the tenants. The machinery and equipment of the defendant's plant are of the most modern standard type available, and its operations the same as in plants of a similar kind. The defendant has an investment of $95,000 in the plant.

The court found that the plaintiff suffered in the enjoyment of her property by reason of an unnecessary and unreasonable amount of noise, and of dust discharged upon her property, and that the defendant's plant as originally conducted imposed a burden on the plaintiff above the uses of the industrial zone in which it is located. It also found that defendant had constantly reduced the objectionable features of the plant, and denied the injunctive relief asked, but awarded the plaintiff $1800 damages.

The court visited the premises of the defendant and observed the operation of its plant. No correction of the finding which would materially affect the conclusions reached from the facts found, including those above stated, could justifiably be made. The failure of the court to examine the interior of plaintiff's house and the defendant's office when it visited the premises was not error, particularly as it does not appear that it was requested to do so.

The complaint alleges that the defendant uses its premises "for the purpose of making and manufacturing cement" which it appears is a prohibited use of buildings within this industrial zone. The defendant manufactures concrete, and contends that there is a variance between allegation and proof in that an unlawful use of its property is alleged and the proof is of a lawful use. The action is predicated on nuisance alleged to result from the operation of a large concrete mixer, and it is immaterial that cement is one of the materials used in the operation rather than the product of the operation. Nor is it of material importance in this action whether or not the defendant's use of its buildings is one permitted by the zoning ordinance.

The defendant contends that since its business is a lawful one, located in a permitted industrial zone, equipped with modern standard machinery and effi-

ciently operated, the court could not reasonably reach the conclusion that the operation of its plant caused an unreasonable and unnecessary amount of dust and noise, and imposed a burden upon the plaintiff above that which she assumed by living in an industrial zone. It is undoubtedly true that what constitutes a nuisance in one locality may not in another, and that one who lives in an industrial district must expect to suffer from the noise and dirt necessarily incident to life in such a neighborhood. He does not, however, assume the burden of inconvenience, discomfort and damage caused by the unreasonable operation of the industrial concerns in his vicinity. It is the duty of every person to make a reasonable use of his own property so as to occasion no unnecessary damage or annoyance to his neighbor. If the use is unreasonable the law will hold him responsible. *Hoadley* v. *Seward & Son Co.,* 71 Conn. 640, 646, 42 Atl. 997; *Hurlbut* v. *McKone,* 55 Conn. 31, 10 Atl. 164; *Bartel* v. *Ridgefield Lumber Co.,* 131 Wash. 183, 229 Pac. 306.

Upon the facts found the trial court could reasonably reach the conclusion that the original operation of the defendant's plant imposed a burden upon the plaintiff above that necessarily assumed by one living in an industrial district. That the damage caused the plaintiff was not a necessary result of the efficient operation of the defendant's plant is apparent from the finding of the court, which is not questioned, that it has reduced the objectionable features of its operation.

The defendant contends that the measure of the plaintiff's damages is the amount of the depreciation in the value of her property caused by the operation of the defendant's plant, and that, the court having found that the evidence did not disclose to what extent in dollars and cents the market value of the plaintiff's house was affected, she is entitled to recover at most

only nominal damages. If the plaintiff's cause of action were based upon the creation of a nuisance resulting in the permanent taking of an interest in her land her damages would be measured by the resulting depreciation in its value. *Southern New England Ice Co.* v. *West Hartford,* 114 Conn. 496, 507, 159 Atl. 470. Such is not the character of the defendant's invasion of the plaintiff's rights. She is entitled to recover only for the temporary interference with her use and enjoyment of her property prior to the bringing of this action. Depreciation in the value of her property is not the measure of her damages. *American Locomotive Co.* v. *Hoffman,* 108 Va. 363, 61 S. E. 759. The plaintiff and her family occupied part of her two-family house and rented the other part. The court has found that since defendant commenced the operation of its plant her rooms have been vacant one-third of the time and the rentals have been reduced from $35 to $20 a month. This is a sufficient basis for an award of damages for reduction of rental value of the tenement occupied by tenants. She is also entitled to recover for the physical discomfort and annoyance caused by the operation of the defendant's plant in so far as it has materially affected the comfortable enjoyment and occupancy of the portion of the house in which she and her family lived. *United States Smelting Co.* v. *Sisam (C. C. A.)* 191 Fed. 293; *Baltimore & Potomac R. Co.* v. *Fifth Baptist Church,* 108 U. S. 317, 2 Sup. Ct. 719; *Millett* v. *Minnesota Crushed Stone Co.,* 145 Minn. 475, 177 N. W. 641, 179 id. 682; 3 Sedgwick, Damages (9th Ed.) § 948; 4 Sutherland, Damages (4th Ed.) § 1048. In the nature of things such damages are not susceptible of exact pecuniary computation and must be left largely to the sound judgment of the trier. *Judson* v. *Los Angeles Suburban Gas Co.,* 157 Cal. 168, 106 Pac. 581; 2 Wood, Nuisances (3d Ed.) § 866. The

plaintiff is entitled to substantial damages, and we find nothing in the record which would justify us in concluding that the amount which the trial court has fixed is not reasonable compensation.

There is no error.

In this opinion the other judges concurred.