## Eva W. Nair *v.* Benjamin D. Thaw

Alcorn, House, Thim, Ryan and Covello, Js.

Argued April 2—decided May 9, 1968

*George Muir,* for the appellant-appellee (plaintiff).

*Peter B. Sullivan,* with whom was *Paul W. Orth,* for the appellee-appellant (defendant).

HOUSE, J. The parties own and occupy residences in an AA residence zone on opposite sides of Brookside Place in West Hartford. The defendant's residence cost in excess of $300,000. It is equipped with various machinery and equipment of the most modern and advanced design, including a glass-enclosed swimming pool and an elaborate air-conditioning system, which alone cost approximately $46,000. Most of the machinery and equipment serving the residence is located in a room the dimensions of which are approximately ten feet by twelve feet. Immediately in front of this room but

in a separate structure one and one-half feet from the residence and attached to it by pipes and wires is a cooling tower 70½ inches wide, 93 inches long and 73¾ inches high; it is enclosed on the sides away from the house by a wooden fence about seven feet high. Without reciting a detailed description of this equipment and its operation, it suffices for us to note that it is not the usual air-conditioning system, which operates only in extremely hot weather, but is of a commercial or industrial type not found in the ordinary residence and is designed to operate continually. Although the ordinary, average-sized, single house in West Hartford would use an air-conditioning unit having approximately a 60,000-BTU capacity, the unit installed for the defendant's house has a 300,000-BTU capacity for refrigeration and a 350,000-BTU capacity for heating energy.

It is the operation of this equipment and the resulting allegedly unwarranted and excessive noise arising from its operation which gave rise to this action. It is the plaintiff's claim that the installation of the air-conditioning equipment is in violation of the West Hartford zoning ordinances and that its operation constitutes a nuisance which has injuriously affected her health, made it impossible for her to continue to occupy her home and impaired the value of her property. The plaintiff sought an injunction against the operation of the equipment as a nuisance installed in violation of the zoning ordinances, and she claimed $100,000 damages as well as general equitable relief.

The trial court rendered judgment awarding damages of $3500 to the plaintiff and enjoining the defendant from operating the cooling tower between the hours of 10 p.m. and 8 a.m. until he reduced

the sound level emanating therefrom to be within certain prescribed limits, measured in decibels, on sound-level readings taken outside the plaintiff's bedroom. At the same time, the court filed a lengthy and detailed memorandum of decision in which it analyzed the problems involved and discussed the expert testimony and conflicts in evidence, its own observations based on visits to the premises and the controlling principles of law applicable to the facts. The court's detailed analysis and resulting judgment, however, satisfied neither party, and both have appealed from the judgment rendered.

The plaintiff has abandoned most of her assignments of error attacking the court's finding of facts. Her appeal, as briefed, chiefly claims error in the refusal of the court to find that the installation of the cooling tower was a violation of the zoning ordinances, in refusing to order mandatory removal of the tower and in refusing to enjoin its operation during the day and early evening hours as well as the nighttime hours. In addition, she claims error in the refusal of the court to grant her further opportunity to make tests in the defendant's residence to ascertain the source of high-frequency noises pervading her home, in receiving a report of three acoustic experts and in refusing to award exemplary damages to her.

In his appeal, the defendant, although he seeks affirmance of the judgment so far as it is attacked by the appeal of the plaintiff, seeks a reversal of the judgment, with judgment directed for him, on the basis of claimed errors in the finding of facts and on the claim that the court erred in conditionally enjoining the nighttime operation of the air-conditioning system and in awarding damages of $3500.

Since the court's finding of facts is basic to a consideration of the appeals, we have first examined the assignments of error directed to that portion of the finding. It is not subject to any material correction. It is futile to seek to have paragraphs of a draft finding or a counter finding substituted for the salient details of the finding where the evidence is conflicting and the finding as made has support in the evidence. *Winnick* v. *Parish*, 142 Conn. 468, 474, 115 A.2d 428. This is particularly so when facts are not admitted or undisputed and where the existence of a fact depends on questions of credibility. *Drazen Lumber Co.* v. *Casner*, 156 Conn. 401, 403, 242 A.2d 754; *Brockett* v. *Jensen*, 154 Conn. 328, 330, 225 A.2d 190.

In an AA residence zone in West Hartford, no buildings are permitted other than single-family residences "together with such other buildings as are ordinarily appurtenant thereto." West Hartford Zoning Regs. § 17.1.10 (1945 as amended). The word "building" is stated to include "any structure other than a boundary fence or wall." Id. § 17.1.1 (A). The court found that the cooling tower "is reasonably suited to the air-conditioning needs of defendant's residence" and concluded that the installation and maintenance of the tower "does not violate the West Hartford zoning ordinance." The zoning regulations do not prohibit an exterior cooling tower or detached or semidetached installation, and the court reasoned that, in the absence of express prohibitory language, an air-conditioning system which is suitable for the unique size of the defendant's unusual residence is permissible. Although no similar air-conditioning unit exists in any other residence in West Hartford, the court found that there are approximately seven such

units installed in residences throughout the country. We cannot say as a matter of law that the court could not reasonably conclude that the semidetached cooling tower, which is reasonably suited to the air-conditioning needs of the particular residence, is a building which is ordinarily appurtenant to such a residence. We, accordingly, find no error in this conclusion of the court.

The plaintiff claims that the operation of the defendant's equipment constitutes a nuisance and that she is entitled to its abatement. The basis of her claim is twofold, the first being the noise emanating from the cooling tower and the other, a high-frequency, pure tone or hum which the plaintiff and her husband first noticed about November, 1964, and which they assert emanates from the defendant's residence.

Before the hearing on the merits of the complaint, the Superior Court issued a temporary injunction prohibiting the operation of the cooling tower between the hours of 10 p.m. and 8 a.m. Following the hearing on the application for the temporary injunction, the defendant obtained from Carl W. Lemmerman, the plaintiff's acoustical expert, a detailed proposal for muffling or attenuating the sound coming from the cooling tower. Thereafter, and in substantial accordance with that expert's proposal and at a cost of $2400, the defendant installed baffles on the air intake and air discharge of the cooling tower and a partial housing over the motor. He later, at a cost of $160, installed a flexible hose on the water pipe in the equipment room to dampen any vibrations. After the installations, the plaintiff's expert took further readings at the plaintiff's request and informed the plaintiff that in his opinion there was no longer any nuisance. He was

not again consulted by the plaintiff and was called as a witness for the defendant at the trial. Despite the alterations made by the defendant, the operation of the air-conditioning system continued to create annoying noise, to disturb the plaintiff and her husband, and to invade the peace and quiet of her home. The court expressly found the operation to be "annoying and irritating to persons of average sensibilities" and that it "continues to be so annoying notwithstanding the baffles installed by the defendant."

From the court's inspections of the plaintiff's premises, the voluminous testimony, including much expert opinion, and the test data, the court concluded that "the defendant has now eliminated the noise problem of the cooling tower during the day and early evening hours," when the neighborhood background noise level is higher than it is at night, and that a person of average sensibilities would not then be annoyed. It was on the basis of this finding that the court concluded that the injunction against the operation of the cooling tower be limited to prohibit its operation between 10 p.m. and 8 a.m. until the defendant reduced the sound level emanating from the tower so that a sound-level reading taken between the hours of midnight and 3 a.m. outside the plaintiff's bedroom window with the cooling tower on showed a reading of no higher than thirty-five decibels at the 500- and 250-cycle band, forty-five decibels at the 125-cycle band and fifty decibels at the 63-cycle band.

"For over one hundred years in this state, we have recognized the general power of equity to afford relief by injunction and damages for injury caused by a nuisance created by the unreasonable conduct on one's own property of an otherwise law-

ful activity. *Whitney* v. *Bartholomew,* 21 Conn. 213; *Bishop* v. *Banks,* 33 Conn. 118; *Hurlbut* v. *McKone,* 55 Conn. 31, 10 A. 164; *Heppenstall Co.* v. *Berkshire Chemical Co.,* . . . [130 Conn. 485, 488, 35 A.2d 845]; *Cyr* v. *Brookfield,* 153 Conn. 261, 216 A.2d 198." *Krulikowski* v. *Polycast Corporation,* 153 Conn. 661, 666, 220 A.2d 444. "It is the duty of every person to make a reasonable use of his own property so as to occasion no unnecessary damage or annoyance to his neighbor. If the use is unreasonable the law will hold him responsible." *Nailor* v. *C. W. Blakeslee & Sons, Inc.,* 117 Conn. 241, 245, 167 A. 548; *Marchitto* v. *West Haven,* 150 Conn. 432, 437, 190 A.2d 597. "Determining unreasonableness is essentially a weighing process, involving a comparative evaluation of conflicting interests in various situations according to objective legal standards." Restatement, 4 Torts § 826, comment b.

As we said in *Krulikowski* v. *Polycast Corporation,* supra, 669, "[t]he issuance of an injunction and the scope and quantum of injunctive relief rests in the sound discretion of the trier." See also 39 Am. Jur. 330, Nuisances, § 47; Spater, "Noise and the Law," 63 Mich. L. Rev. 1373, 1380. There is nothing in the record in the present case which would justify us in holding on either the plaintiff's appeal or the defendant's appeal that the injunction as issued transcends the proper limits of the court's discretion exercised after a full hearing and after consideration of a mass of evidence and conflicting expert scientific opinion.

Nor do we find any error in the award of damages to the plaintiff in the amount of $3500. The plaintiff claims that the court erred in refusing to award exemplary damages. "Concerning this, it is enough to say that the plaintiff did not allege in

. . . [her] complaint any wanton or malicious misconduct of the defendant, or negligence tantamount to such misconduct. Further, no facts have been found from which could be reached a reasonable conclusion that the acts of the defendant were of such a kind." *Killian* v. *Bolster,* 96 Conn. 693, 694, 115 A. 469. The defendant in his appeal asserts that the award was excessive. The plaintiff was entitled to recover for the physical discomfort and annoyance caused by the defendant's unreasonable use of his air-conditioning equipment so far as it materially affected the comfortable enjoyment and occupancy of her home and interfered with her use and enjoyment of her property. *Nailor* v. *C. W. Blakeslee & Sons, Inc.,* supra, 246. "In the nature of things such damages are not susceptible of exact pecuniary computation and must be left largely to the sound judgment of the trier. . . . [W]e find nothing in the record which would justify us in concluding that the amount which the trial court has fixed is not reasonable compensation." Ibid.; *Krulikowski* v. *Polycast Corporation,* supra, 670.

The remaining points raised by the appeal concern the plaintiff's claim that a pure-tone or high-frequency hum or sound of constant pitch was audible in her home. By amendment to her complaint in December, 1965, she alleged that this was a separate and distinct sound emanating from the defendant's property, causing annoyance to her. Whether such a sound existed and, if it did, whether it emanated from the defendant's residence was a strongly contested issue. The plaintiff, whose ear, nose and throat specialist testified that she has a highly acute sense of hearing, and her husband both testified that the noise existed. On the other hand, the court found that the following persons who were

present at the trial and had been on the defendant's premises from time to time did not hear the hum at any time or place: the court; the defendant; Robert M. Hoover, the defendant's expert; Carl W. Lemmerman, the plaintiff's former expert; Lewis S. Goodfriend, the plaintiff's expert retained during the trial; two neighbors; and an employee of the Hartford Electric Light Company. The latter on one occasion shut off all power to the defendant's premises at the transformer on the utility pole at the street edge of the plaintiff's premises, but the plaintiff's husband still claimed to hear the noise.

At the conclusion of the trial, and at the suggestion of the court made during a chamber's conference, it was agreed between the attorneys for the plaintiff and the defendant that further tests should be made by the three experts who had already testified on the trial, one representing the defendant and the other two representing the plaintiff, for the purpose of attempting to ascertain the source of the high-frequency, pure tones heard in the plaintiff's residence. The court expressly found that the understanding was that the equipment, method, and techniques of conducting the test would be left to the experts of both parties and that the report would be filed with the court if the experts agreed on a conclusion. The unanimous report of the three experts concluded that instruments indicated the presence of several, pure, tone-like signals in and around the plaintiff's residence which were below the sound-pressure level of zero decibels and that by turning off the electric power and gas at the defendant's residence "it has been conclusively proved that the above-mentioned signals do not emanate from the Thaw residence, since all the signals still persisted."

At a further hearing, over the objections of the plaintiff, the court received the report, which it marked as a court exhibit. Although the plaintiff does not contest the finding that there was an off-the-record agreement that the test be made by the three experts as suggested by the court, she claims that, contrary to the court's finding, the stipulation did not include an agreement that the report, if unanimous, should be filed with the court as an exhibit in the case. This aspect of the case once again illustrates the hazards of making off-the-record stipulations relative to matters arising in the course of a trial. The court and counsel can best assure themselves of protection from misunderstanding and faults of recollection by having a transcript available for review by this court and by not bypassing the services of the court reporter. Even with a transcript, however, the ultimate responsibility for seeing that the record conforms to the fact rests on the trial court subject to proper proceedings for rectification pursuant to §§ 675 and 695 of the Practice Book. *Whiteside* v. *State,* 148 Conn. 77, 83, 167 A.2d 450; *Papallo* v. *Meriden Savings Bank,* 128 Conn. 289, 291, 22 A.2d 637. The claim of the plaintiff that she was deprived of any opportunity for cross-examination of the three witnesses who submitted the report avails her nothing in the absence of anything in the record to indicate that she asserted and was denied the right to such an examination. We find no error in the conclusion of the trial court that the plaintiff failed to sustain her burden of proving that the high-frequency, pure tones found to exist in her home emanated from the defendant's residence. Even if the admission of the exhibit was erroneous, the ruling was harmless because the report did no more than confirm what the

plaintiff's evidence failed to prove, namely, that the high-frequency tones came from the defendant's house.

One further reason of appeal remains. The final hearing in the case was concluded on March 28, 1966. Subsequently in her brief dated June 27, 1966, the plaintiff requested a further period of ninety days within which to make still further tests for the purpose of ascertaining the source of the high-frequency noises. The plaintiff claims that the court was in error in refusing to grant this request. We find no error in its ruling, which was based on the right of the defendant to have the litigation terminated.

There is no error on either appeal.

In this opinion the other judges concurred.