VICTORIA E. O'NEILL ET AL. *v.* CAROLINA FREIGHT
CARRIERS CORPORATION

KING, C. J., ALCORN, HOUSE, COTTER and THIM, Js.

Argued June 6—decided July 2, 1968

*William W. Sprague,* with whom was *John R. FitzGerald,* for the appellant (defendant).

*Norris L. O'Neill,* for the appellees (plaintiffs).

HOUSE, J. This is an appeal by the defendant from a judgment which, by injunction, regulated the use and operation of its truck terminal, which is on the westerly side of route 5 in an industrial zone in East Windsor.

The finding is not subject to correction in any respect which would be of material advantage to the defendant. The terminal was constructed and has been in operation since July, 1964. The use is one permitted in the industrial zone. The plaintiffs, Victoria and Maurice O'Neill, own and occupy a residence on premises immediately north of the terminal. They purchased the property in June, 1962. Although the residential use of premises within the industrial zone has not been permitted since 1960, the plaintiffs' use of their property is a nonconforming one since the house was constructed prior to that date. The plaintiffs knew that their property was in an industrial zone when they purchased it.

The complaint alleged that the defendant's operation of its trucking terminal constituted a nuisance which injured, disturbed and annoyed the plaintiffs in the enjoyment of their property. By way of relief they claimed damages, punitive damages, attorney's fee and an injunction forbidding the defendant to create any sound or light on its terminal which would injure, disturb or annoy them.

In a lengthy finding, the court described the details of the defendant's operation of its terminal. The defendant is engaged in both long-distance and short-distance hauling of merchandise. Fifteen trucks, of which eleven are tractor-trailers, are used for short-distance hauls, and twenty-five to thirty long-haul tractor-trailers come in from the South in the course of a week. Pickups are made during

the day, and loading for southern destinations usually takes place in the evening hours but may take place all night. The peak of activity at the terminal varies from between 7 p.m. to 1 a.m. Large tractor-trailer diesel trucks used in connection with the long-distance hauling enter and leave the terminal during the entire night. While parked, the motors of refrigerator tractor-trailers must be kept running to maintain a constant temperature for the merchandise in the trailers. When a trailer is backed against a dock and is unhooked, the brakes are automatically locked and cannot be released until the compressor, powered by the motor, builds up enough air pressure to release them, a process which takes up to fifteen minutes. The terminal is a large brick building with an amesite area for truck movements on all sides. It has docking facilities which will accommodate twenty-one trucks, ten each on the north and south sides and one on the west side. The defendant uses an average of fifteen units at docks in the course of an evening. Hand trucks, fork lifts, conveyors and dollies are used for moving merchandise from the trucks into and out of the terminal. Magnesium plates are used to bridge the gaps between the trailers when they are parked against the terminal and the dock. These, when dropped in use, land on either concrete or steel and make a loud noise. The air brakes on the defendant's trucks make a very loud, shrill, hissing noise. The heating and cooling units which run when the trailers are parked make a high-pitched noise. Loud radio noise, hollering, scraping noises, noises of metal hitting metal with great force, as well as loud impact noises and vibrations are carried from the defendant's terminal to the residence of the plaintiffs, and the defendant's floodlights shine

directly into the plaintiffs' living room from dark until 6 a.m. Each party produced an expert witness who testified about the sound levels which he found in the area, as to the scientific aspects of sound measurement and as to the level of noise emanating from the defendant's terminal.

The court also found that the plaintiffs are normal persons of ordinary habits and sensibilities, that the defendant's terminal, as operated, has interfered with their sleep and required Mrs. O'Neill to go to her daughter's home to sleep one or two nights a week in order to get relief from the noise of the defendant's operation, that as a result of loss of sleep Mr. O'Neill has been irritable and unable properly to conduct his business and that the O'Neills have been unable to use their screened patio, have been restricted in the use of their swimming pool and have been annoyed and disturbed in the enjoyment of their home. The court expressly found that the sounds of loud shouting, radios, truck units with motors running on the north side of the defendant's open terminal with the terminal doors open, moving materials and rolling or sliding dollies after 11 o'clock at night are unreasonable.

On the basis of these facts, the court concluded that the noises, disturbances and lights emanating from the terminal from 11 p.m. to 6 a.m. are beyond what a normal person of ordinary habits and sensibilities can endure, that the lights on the southerly side of the defendant's property and the operation of the trucking terminal on its northerly side between 11 p.m. and 6 a.m. constitute nuisances, that the conduct of the defendant has not been wilful or malicious but that, as to the plaintiffs, the conduct of the defendant's business is an abatable nuisance.

By way of relief the court awarded damages of

$1000 to each of the plaintiffs and issued an injunction prohibiting the defendant between 11 p.m. and 6 a.m. from playing radios and permitting loud shouting, from loading or unloading on the docks on the northerly side of the terminal, from running any motor on the northerly side of the building and from using the northerly gate of the terminal for ingress and egress of trucks and tractor-trailers. It also prohibited the defendant from at any time permitting lights on the southerly side of its property to shine into the plaintiffs' living room and from the use of conveyors or plates as thresholds without the application of rubber or other dampening material thereto. On this appeal the defendant asserts that the court erred in concluding that the conduct of the terminal amounted to an abatable nuisance and that the court abused its discretion in awarding the relief which it granted.

We have had recent occasion to discuss the law of nuisance and the general power of equity to afford relief by injunction and damages for injury caused by a nuisance created by the unreasonable conduct on one's own property of an otherwise lawful activity. See *Nair* v. *Thaw*, 156 Conn. 445, 451, 242 A.2d 757; *Krulikowski* v. *Polycast Corporation*, 153 Conn. 661, 220 A.2d 444, and cases cited therein. As we repeated in the *Nair* case, supra, 452, " 'It is the duty of every person to make a reasonable use of his own property so as to occasion no unnecessary damage or annoyance to his neighbor. If the use is unreasonable the law will hold him responsible.' *Nailor* v. *C. W. Blakeslee & Sons, Inc.*, 117 Conn. 241, 245, 167 A. 548; *Marchitto* v. *West Haven*, 150 Conn. 432, 437, 190 A.2d 597. 'Determining unreasonableness is essentially a weighing process, involving a comparative evaluation of conflicting in-

terests in various situations according to objective legal standards.' Restatement, 4 Torts § 826, comment b." We also reiterated in the *Nair* case (p. 452) the rule as stated in the *Krulikowski* case, supra, 669: "The issuance of an injunction and the scope and quantum of injunctive relief rests in the sound discretion of the trier." See also 39 Am. Jur. 330, Nuisances, § 47; Spater, "Noise and the Law," 63 Mich. L. Rev. 1373, 1380. "If the subordinate facts logically support a trial court's conclusion that a particular property use constitutes a common-law nuisance as to complaining plaintiffs, that conclusion must be sustained on appeal." *Herbert* v. *Smyth,* 155 Conn. 78, 82, 230 A.2d 235.

"There is nothing in the record which would justify us in holding that the injunction as issued in this case transcends the proper limits of the trial court's discretion" or, on the question of damages, " 'that the amount which the trial court has fixed is not reasonable compensation.' " *Krulikowski* v. *Polycast Corporation,* supra, 669, 670 (quoting from *Nailor* v. *C. W. Blakeslee & Sons, Inc.,* 117 Conn. 244, 247, 167 A. 548).

There is no error.

In this opinion the other judges concurred.