[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs seek a preliminary injunction against the defendants' operation of a business that processes, stores and sells soil and wood chips at a site across the street from the plaintiff's home on Blacks Road in Cheshire. The plaintiffs claim that the defendant's operation constitutes a nuisance.
The defendants assert that this court lacks subject matter jurisdiction because their operation is authorized by a special use permit issued by the Cheshire zoning authorities. The defendants take the position that this court may not grant injunctive relief as to a use authorized by special permit, because, they assert, the plaintiffs failed to exhaust administrative remedies by seeking to overturn the granting of the special permit or by urging enforcement action by the town.
The defendants claim that this count is without jurisdiction CT Page 6961 to alter or set aside by injunction the terms of the special permit and that the plaintiffs' failure to participate in any appeal from the proceedings on the special use permit precludes them from seeking j the same relief by means of an action to enjoin the operation as a claimed nuisance.
The parties agreed at the special proceedings calendar to present all of the evident relevant both the motion to dismiss and to the merits of the application for preliminary injunctive relief.
JURISDICTION
The issue of subject matter jurisdiction must be addressed first. The facts relevant to that issue are as follows. The plaintiffs bought their home in 1982. In 1987 the defendants began to clear their wooded lot directly across Blacks Road from the plaintiffs' property. The defendants then built an office and headquarters for their soil processing business on the lot, which comprises 3.72 acres and which is zoned I-2. The evidence did not suggest that this zoning description had been different at any time from 1982 to date. Cheshire's zoning regulations provide that screening, sifting, bulk storage and other forms of processing of "sand, stone and gravel and the like" are uses permitted in an I-2 zone not as of right but "subject to obtaining a Special Permit from the Planning and Zoning Commission as provided in Section 40." (Ex 1, p. 30-18).
In 1992, the defendant Apple Valley Excavating, Inc. was a granted a special permit for a topsoil processing operation. The conditions of that special permit limited operation to the hours of 8:00 A.M to 5:00 P M., Monday through Friday and allowed operation on Saturdays from 8:00 A.M. to noon "only under extenuating circumstances." The permit prohibited operation on legal holidays and, by implication, on Sundays. The permit required the "material and operation of the topsoil processing [to be] relocated to the rear of the building. . . ."
On April 11, 1997, Apple Valley Excavating, Inc. applied for a special permit for an additional five year period. The Cheshire Planning and Zoning Commission heard the application at a meeting on April 28, 1997 and approved the special permit application with the same restrictions as had previously been imposed as to the hours of operation. The renewal conditions also included the following requirements: CT Page 6962
 2. The existing tracking apron must be maintained in good condition. Control of dust and debris on the site and the surrounding roadways during operations at the site should be the applicant's responsibilities.
 3. All comments in the memo dated April 2, 1997 from the Cheshire Police Department shall be complied with.
The plaintiffs did not receive personal notice of the application for renewal of the Special Permit. Notice of the pendency of the application was not proven to have been published in the legal notice of any newspaper before it was considered at a meeting of the Planning and Zoning Commission. The approval of the application was, however, so published.
The Connecticut Supreme Court has very recently ruled in a similar context that the doctrine of exhaustion of administrative remedies does not deprive the Superior Court of jurisdiction over an action for injunctive relief concerning a disputed land use.Loulis v. Parrot, 241 Conn. 180 (1997). The Supreme Court has on several previous occasions ruled that a party may seek injunctive relief to prevent a nuisance which specifically and materially damages his property without first exhausting administrative remedies. Cummings v. Tripp, 204 Conn. 67, 75 (1986); Reynolds v.Soffer, 183 Conn. 67, 71 (1981); Blum v. Lisbon LeasingCorporation, 173 Conn. 175, 180 (1977); Scoville v. Ronalter,162 Conn. 67, 74 (1971).
The plaintiffs unquestionably assert specific and material damage to their property in the form of blowing dust and noise from the operation of soil screening machinery, trucks, and earth moving equipment. Accordingly, pursuant to the case law cited above, this court has subject matter jurisdiction to consider the plaintiffs' application for injunctive relief, and the plaintiffs are not required first to exhaust procedures before to Planning and Zoning Commission.
STANDARD FOR PRELIMINARY INJUNCTIVE RELIEF
In order to obtain temporary injunctive relief, a party must establish a reasonable degree of probability that he or she will ultimately prevail on the merits and that denial of such relief may result in greater harm to the plaintiff than will result to CT Page 6963 the defendant from granting relief. Griffin Hospital v.Commission on Hospital and Health Care, 196 Conn. 451, 457
(1985), citing Olcott v. Pendleton, 128 Conn. 292, 295 (1941).
"The merits" at issue in this case are the merits of the plaintiff's claim that the manner in which the defendants are conducting their business on their property constitutes a nuisance.
The elements of a common law nuisance claim are well established. The Supreme Court has ruled in Tomasso Brothers,Inc. v. October Twenty-Four, Inc., 221 Conn. 194, 197 (1992) that
 In order to establish its claim of nuisance, the plaintiffs had to prove the existence of the following four elements: "the condition complained of had a natural tendency to create danger and inflict injury upon person or property; (2) the danger created was a continuing one; (3) the use of the land was unreasonable or unlawful; [and] (4) the existence of the nuisance was the proximate cause of the [plaintiff's] injuries and damages. Filisko v. Bridgeport Hydraulic Co., 176 Conn. 33, 35-36
(1978); Kostyal v. Cass, 163 Conn. 92, 99-100 (1972); Heilig v. LeQuire, 4 Conn. App. 125, 127 (1985)"
The condition that the plaintiffs allege to be a nuisance is the operation of their equipment "in a manner which creates an unreasonable level of noise, traffic, dust, vibrations, dirt and mud," especially on weekends and before 9:00 A.M. Despite the restrictions in the special permit, the defendants have repeatedly conducted operations on Saturdays.
This court finds that the defendants have created a huge hill of materials higher than the roof of their office building, and that heavy earth-moving equipment with noisy engines and back-up signals is used to push materials to the top of this pile and to form what amounts to a road reaching the top. Because of the size and extreme height of the pile, dust and dirt blow from it across the road, unimpeded by the defendants' own building or by the small evergreens between the pile and the windows of the plaintiffs' house.
Large dump trucks enter the driveway of the defendants' operation frequently to pick up and drop off material. The noise CT Page 6964 created by these trucks includes the sound of their engines, which are frequently left to idle noisily, and the clang of their heavy tail gates being dropped against the metal of the bodies of the trucks. The screening operation creates noise in the form of clanging equipment, rumbling engines, and clanking rocks. At many times, more than one of these sources of noise is in progress.
The defendants have located all of their operations in the area toward the front of their property, immediately around their office building, and on the side of the property closest to the road and the plaintiffs' residence.
The trucks that enter the defendants' property send up clouds of fumes on occasion and track soil out on to the road, causing clouds of dust as traffic passes and sending that dust and airborne dirt on to the plaintiffs' property. A videotape with audio presented by the plaintiffs demonstrates a level of noise that would be unacceptable to most people. The plaintiffs have been limited in their ability to use their front yard because of dust or to open their windows because of noise and dust. The noise intrudes on the plaintiffs' activities and awakens them in the morning on Saturdays and in the summer. While the volume of the noise and dust varies to some extent, these conditions affect the plaintiffs' property and their use of it when the defendants' operation is in progress.
This court finds that the plaintiffs have demonstrated a reasonable degree of probability that they will establish the five elements of their nuisance claim, as in Filisko v.Bridgeport Hydraulic Co., 176 Conn. 33, supra.
The Supreme Court has recognized production of noise "to the detriment of ones's neighbor" as a continuing nuisance that may be subject to injunction. Tomasso Bros., Inc. v. OctoberTwenty-Four, Inc., 230 Conn. 641, 649 (1994); Maykut v.Plasko, 170 Conn. 310, 317 (1976); O'Neill v. Carolina FreightCarriers Corporation, 156 Conn. 613 (1968); Nair v.Thaw, 156 Conn. 445 (1968).
Both the owner and the user of land can be enjoined as to a nuisance. State v. Tippetts — Abbett — McCarthy — Stratton,204 Conn. 177, 184 (1987). The Supreme Court has upheld "the issuance of injunctions against the conduct on one's own property of an otherwise lawful activity." Maykut v. Plasko, 170 Conn. 317;O'Neill v. Carolina Freight Carriers Corp., 156 Conn. 613, 617
CT Page 6965 (1968) and has ruled that it is the duty of every person to make a reasonable use of his own property so as to occasion no unnecessary damage or annoyance to his neighbor. Id.
While the defendants' use of their property is lawful in the zone in which it exists, it may nevertheless be found to constitute a nuisance: "[t]hat a municipality by its zoning regulations condones certain uses is no defense to an unreasonable use constituting a nuisance." Maykut v. Plasko,170 Conn. 311; Herbert v. Smyth, 155 Conn. 78, 83 (1967). The Supreme Court upheld in O'Neill v. Carolina Freight Carriers Corp.,156 Conn. 613 (1968) an injunction limiting the activities of a truck terminal even though the terminal was a lawful use in the industrial zone in which it and the plaintiffs' preexisting residence were located.
"Determining unreasonableness is essentially a weighing process, involving a comparative evaluation of conflicting interests in various situations according to objective legal standards." O'Neill v. Carolina Freight Carriers Corp.,156 Conn. 617-18. As has been detailed above, the plaintiffs are being denied the quiet enjoyment of their home and have been subjected to annoying and distracting noise and blown dust and dirt. The defendants offered no reason why the earth materials are piled so high in a small part of their property nor why the screening operation is operated so close to the road. The court finds that the manner in which the defendants are conducting their business is unnecessarily noisy and productive of blowing dirt because of the choice to pile materials high in a small area and to concentrate all activity to the front of the defendants' acreage.
Having also established that the operations described above are the proximate cause of the noise and dirt complained of, the plaintiffs have demonstrated the requisite likelihood that they will prevail on the merits of their nuisance claim.
Though they had an opportunity to do so, the defendants offered no evidence as to the harm that would result to them if their activities were to be ordered to be limited in any of the respects sought by the plaintiffs. The court can infer that the defendants are operating as they do because they find it convenient to do so. In balancing the harm from the entry of preliminary injunctive relief against the harm of failure to enter such relief, the balance therefore tips toward the plaintiffs. CT Page 6966
In the absence of any further evidence as to the burden that would result from injunctive relief, the court finds that the demonstrated harm to the plaintiffs outweighs the inconvenience to the defendants of altering their habits to create less noise and airborne dust.
The court finds that the plaintiffs have no adequate remedy at law to protect the use of their property.
BOND
The defendants have urged this court to require the plaintiffs to pose a "substantial" bond in connection with the entry of preliminary injunctive relief, particularly as such relief is not subject to immediate appellate review. The defendants argue in their post hearing brief that any injunction will "undoubtedly require the defendants to take actions which will cost money" and will "undoubtedly reduce their revenue by limiting their business activities." The defendants presented no evidence in support of either of these claims. While Conn. Gen. Stat. § 52-472 provides for the posting of an adequate bond, the court has not been presented with any evidence concerning the cost of relocating activities and of precautions to reduce noise. On the reasonable inference that labor will be necessary to perform the changes, the court orders the plaintiffs to post a bond in conformity with the provisions of § 52-472 in the amount of $5,000.00.
ORDER
The preliminary injunction proposed by the plaintiffs is too vague and indefinite to form the basis of a court order. Since the court has not been presented with scientific evidence concerning the decibel level of the noise at issue, it is not possible to specify in clearly quantified terms the level to which noise should be reduced during the pendency of the action. Instead, this court's orders are addressed to those features of the defendant's operation that were demonstrated to be especially productive of noise, as well as those shown to be especially productive of blowing dust.
It is hereby ordered
1. That the defendants are prohibited from creating or CT Page 6967 maintaining after July 10, 1997 piles of soil or other materials at a height that exceeds the height of the existing building on their property;
2. That the defendants are prohibited from operating topsoil screening equipment closer to the road than the area behind their building unless they can by other means achieve a reduction in the noise caused by that equipment;
3. That the defendants are prohibited from operating on Saturdays;
4. That the defendants are prohibited from allowing those in their employ or those using their facilities to cause truck tailgates to be slammed down in a loud manner.
5. That the defendants are prohibited from allowing dust and dirt tracked on to their driveway and entryway to remain there and shall regularly sweep or wet down areas to reduce the amount of blowing dust and dirt.
The above preliminary orders shall be in effect until further order of this court.
Beverly J. Hodgson Judge of The Superior Court