[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: APPLICATION FOR PERMANENT INJUNCTION
CT Page 17185
The plaintiffs instituted the present action seeking a temporary injunction with respect to the abatement of noise emanating from water pumps located on the defendant's property. The parties agreed to submit the matter to the court as a request for a permanent injunction.
The plaintiffs and the defendants are adjoining neighbors in a rural, secluded neighborhood located in Wilton, Connecticut. Access to their properties is by way of a dirt road.
The defendants installed a water pond on their property. In conjunction with the pond a three quarter horsepower pump is utilized for the purpose of water circulation and is not the subject of the present action. The defendants, however, also utilized a three horsepower pump which operates a waterfall and is utilized for the feeding of the fish contained in the pond. The pump is located approximately thirty feet from the plaintiffs' property. The three horsepower pump is operated generally from 5:00 or 5:30 in the afternoon, although sometimes earlier, and is turned off on the average at 8:30 p.m. The plaintiffs claim that the noise emanating from the three horsepower pump is loud and constitutes a nuisance.
Approximately a month prior to the institution of the present lawsuit, the defendants installed an "L" shaped barrier with a roof around the pumps. The plaintiffs claim the structure decreased the noise but that the noise still constitutes a nuisance even after the erection of the structure.
During the periods of operation, the parties agree that the noise emitted by the pumps do not constitute a violation of Conn. Regs. §22a-69-1.2 (f), § 22a-69-3.5 and § 22a-69-3.1. Both parties retained acoustical experts and the plaintiffs' expert found that the ambient noise was between 40 and 44 decibels and the noise emanating from the pumps was between 50 decibels and 53 decibels located at the property line; 49 to 50 decibels on the plaintiffs' porch and 50 decibels on the second floor porch of the plaintiffs' property. Defendants' experts measured the decibels at the property line at between 49.4 and 49.5. Thereafter, the court made a visit to the property and listened to the noise emanating from pumps at various locations along the property line, along the plaintiffs' first floor porch and from the plaintiffs' second floor balcony and second floor bedroom. After the court's first visit to the property, the plaintiffs' requested a second visit on the grounds that the noise existing at the time the court was at the property was not truly representative of the noise emanating from the pumps. Accordingly, the court granted the right to a second visit and the court visited the property a second time and there was no substantial difference between the CT Page 17186 noise emanating at the various locations between the first visit and the second visit by the court.
The plaintiffs also requested the opportunity to present additional evidence after the second visit, which the court granted, but the case was submitted to the court on the basis of testimony given on the previous two hearing dates and upon the two visits by the court to the property.
In order to prove the existence of a nuisance, the plaintiffs must prove that "(1) the condition complained had a natural tendency to create danger and inflict injury upon person or property; (2) the danger created was a continuing one; (3) the use of the land was unreasonable or unlawful; and (4) the existence of the nuisance was a proximate cause of the plaintiff's injuries and damages." Tomasso Bros., Inc. v. OctoberTwenty-Four, Inc., 221 Conn. 194, 197 (1992) (quotation marks and citations omitted).
It is apparent that there is noise emanating from the defendants' property to the plaintiffs' property. However, the court cannot accept the "loudness" of the noise as claimed by the plaintiffs or some of the plaintiffs' witnesses. While a plaintiffs' witness testified that the noise would interfere with the reading of a book on the plaintiffs' porch, the court finds it difficult to accept that testimony. Similarly, one of the plaintiffs testified that it disturbs his sleep when he goes to bed early. From the plaintiffs' bedroom, the noise is barely audible, and the when the pumps are turned off, the major change in the noise level is the absence of the sound. of the waterfall about which no complaint is made.
It is apparent that the defendants are entitled to their pond, their waterfall and their fish. It is also apparent that the plaintiffs are entitled to be free from unnecessary noise, particularly in view of the secluded and rural environment. Both the experts for the plaintiffs and the experts for the defendants agree that the noise level could be reduced by approximately three decibels by the simple installation of a fiberglass noise absorbing barrier at the existing structure, the cost of which would be minimal in view of the time expended on this case by all the parties and their witnesses. However, that barrier has not been installed.
The plaintiffs' expert testified that he had drawn plans for an enclosed structure around the pumps that would completely eliminate the transfer of noise from the defendants' property to the plaintiffs' property. The expert also testified that such a structure would comply with any requirements of air transfer by the manufacturer of the pumps. CT Page 17187 The adequacy of such a design was not contested by the defendants.
It is not appropriate for the court to cause the defendants to create a structure designed by the expert of their adversary. However, the fact remains that the plaintiffs are subjected to noise which, by city standards, is not loud. However, in the particular setting in which these homes are located there is noise and, more importantly, the noise is unnecessary.
"It is the duty of every person to make a reasonable use of his own property so as to occasion no unnecessary damage or annoyance to his neighbor. If the use is unreasonable, the law will hold him responsible. . . . Determining unreasonableness is essentially a weighing process, involving a comparative evaluation of conflicting interests various situations according to objective legal standards."Nair v. Thaw, 156 Conn. 145, 452 (1968) (quotation marks and citations omitted, emphasis supplied).
"It is the duty of every person to make a reasonable use of his own property so as to occasion no unnecessary damage or annoyance to his neighbor." O'Neill v. Carolina Freight Carriers Corporation, 156 Conn. 613,617 (1998) (emphasis supplied)
The testimony established that the three horsepower pump will not be utilized again until next spring. Accordingly, the defendants are enjoined from utilizing the three horsepower pump until such time as it can be operated so as to reduce the noise level to 44 decibels at the property line.
In the event that the defendants claim that the lowering of the noise level to 44 decibels is not technologically possible, they may seek relief from this court prior to turning an the three horsepower pump.
RUSH, J.