[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This matter is before the court on the plaintiffs' application for an order enjoining the defendants from storing helicopters on their property, allowing helicopters to take off from and land on their property and for fines, damages, attorney's fees and other proper relief. The parties have stipulated to and the court finds the following facts.
The plaintiff, the town of Enfield (town), is a municipal corporation. The town duly enacted and adopted a zoning map and a zoning ordinance in accordance with General Statutes § 8-2. The ordinance was revised most recently in 1995 and will be referred to herein as the zoning ordinance. The plaintiff, Wayne T. Bickley, is the zoning enforcement officer for the town, vested with the power to enforce the zoning ordinance of the town, including the power to institute an action or proceeding to prevent the unlawful use of land and to seek remedies for the use of land in contravention of the zoning ordinance. General Statutes § 8-12. The zoning ordinance provides that "[n]o . . . premises shall be used . . . except in conformity with the regulations herein specified for the district in which it is located." Zoning Ordinance Section 3-1.1.
The defendant, Enfield Shade Tobacco, LLC, is a limited liability company duly organized, in good standing and registered in the state of Connecticut. The defendant, Alexander K. Chickosky, is an individual residing in the town of Enfield. The defendant, Henry Alan Maturo, is the owner of two adjacent parcels (the Maturo parcels) located on the south CT Page 6009 side of Still Lane within a R-44 (single family residential) zone in the town of Enfield. The defendant, Constantine Talarski, is the owner of property (the Talarski parcel) located at the corner of Park Street and Moody Road within an I-1 (industrial) zone in the town of Enfield.
Talarski and Maturo are permitting Enfield Shade Tobacco, LLC, and/or Chickosky and/or their agents (collectively Enfield Shade) to use their property for farming tobacco. On one or more occasions in June and July 2001, Enfield Shade has caused a helicopter to be located on the Maturo parcels and to take off from and land on the Talarski parcel. The helicopter did not land on or take off from any structure or any designated or restricted area.
Neither Enfield Shade nor any of the other defendants have applied to or received from the town a special permit to operate a heliport on either the Talarski parcel or the Maturo parcels. The town claims that launching and landing a helicopter constitutes the operation of a heliport in violation of the zoning ordinance.
The standard of review of a municipality's application seeking injunctive relief in order to enforce compliance with a local zoning ordinance is a judicial determination of whether the respondents have violated the ordinance. Farmington v. Viacom Broadcasting, Inc.,10 Conn. App. 190, 197, 522 A.2d 318, cert. denied, 203 Conn. 808,525 A.2d 523 (1987); Greenwich v. Kristoff, 2 Conn. App. 515, 521,481 A.2d 77, cert. denied, 194 Conn. 807, 483 A.2d 275 (1984); Johnsonv. Murzyn, 1 Conn. App. 176, 180, 469 A.2d 1227, cert. denied,192 Conn. 902, 471 A.2d 244 (1984). This rule is justified by the fact that, in enforcing town ordinances, a municipality acts on the behalf of the interest of all of its property owners "to enforce their right to require conformity with the regulation as the quid pro quo for their own submission to the restrictions imposed upon their property." Johnson v.Murzyn, supra, 1 Conn. App. 180. In addition, the legislature empowers municipalities to enforce zoning ordinances. General Statutes § 8-12
implicitly assumes that no adequate alternative remedy exists and that the injury was irreparable in fact. In short, the legislation was necessary, otherwise it would not have been enacted. Johnson v. Murzyn, supra, 1 Conn. App. 180-81. The granting of injunctive relief in zoning enforcement cases rests within the trial court's sound discretion. Id., 183. In balancing the equities of the case, the court should consider (1) the gravity and wilfulness of the violation, and (2) the potential harm to the defendants. Id.
The defendants assert that the town is preempted by state law pertaining to aeronautics and farming from enacting and enforcing ordinances which restrict their ability to launch and land a helicopter CT Page 6010 on the Talarski and Maturo parcels. In particular, the defendants claim that the right to farm act codified at General Statutes § 19a-341[1]
preempts zoning ordinances which restrict farming activities. If the state has occupied a field, any ordinance that operates to regulate such field is necessarily preempted; even if the state has not occupied the field, a local ordinance is preempted if it conflicts with state statutory law.Helicopter Associates, Inc. v. Stamford, 201 Conn. 700, 705, 519 A.2d 49
(1986). "Whether an ordinance conflicts with a statute or statutes can only be determined by reviewing the policy and purposes behind the statute and measuring the degree to which the ordinance frustrates the achievement of the state's objectives." (Internal quotation marks omitted.) Bauer v. Waste Management of Connecticut, Inc., 234 Conn. 221,232, 662 A.2d 1179 (1995). The right to farm act does not profess to occupy the whole area of farming, and neither the plain language of the act nor its purpose as gleaned from its legislative history indicates that it conflicts with the subject zoning ordinances. The right to farm act merely prevents established farming operations from being deemed a nuisance due to the suburbanization of surrounding former farm lands. The test of whether a use constitutes a nuisance is "the reasonableness of the use of the property in the particular locality under the circumstances of the case." Wetstone v. Cantor, 144 Conn. 77, 80,127 A.2d 70 (1956); see also Nicholson v. Connecticut Half-Way House,Inc., 153 Conn. 507, 510, 218 A.2d 383 (1966). The test of unreasonableness is "`essentially a weighing process, involving a comparative evaluation of conflicting interests in various situations according to objective legal standards.'" Nair v. Thaw, 156 Conn. 445,452, 242 A.2d 757 (1968), quoting 4 Restatement, Torts § 826, comment (b) (1939); see also Walsh v. Stonington Water Pollution ControlAuthority, 250 Conn. 443, 456, 736 A.2d 811 (1999); Maykut v. Plasko,170 Conn. 310, 314, 365 A.2d 1114 (1976); O'Neill v. Carolina FreightCarriers Corp., 156 Conn. 613, 617-18, 244 A.2d 372 (1968). The right to farm act does not apply because the town does not claim that launching and landing a helicopter is a nuisance or an unreasonable use of the land, but rather a violation of the zoning ordinance and therefore an illegal use of land.
Even if the right to farm act does apply the zoning ordinance does not conflict with it. The policy and purposes behind the right to farm act is to preserve the right of farmers to continue to operate their farms without the threat of nuisance claims made by newcomers who purchase homes in new suburban developments constructed near longstanding farms. The zoning ordinance does not prevent the defendants from operating their farm in the manner in which it was historically operated. The zoning ordinance even allows the defendants to operate their farm in a new way by spraying crops with fertilizer from a helicopter. All the zoning ordinance does is prevent the defendants from launching and landing a CT Page 6011 helicopter on their land, a practice in which they had not engaged prior to the 2001 growing season.
Even if the zoning ordinance conflicted with the right to farm act, the right to farm act does not protect the defendants' actions. As stated above, the right to farm act protects farming operations which have been in effect for more than a year without substantial change. The defendants have not used a helicopter for more than a year, and the use of a helicopter constitutes a substantial change in the manner in which the farms are operated. In addition, the right to farm act protects farming practices which are generally accepted. The defendants have not made a prima facie case that the use of helicopters in Connecticut is a generally accepted practice by introducing no evidence establishing that the commissioner of agriculture has approved the use of helicopters in Connecticut. Even if they had, since helicopters are not used in farming in Connecticut, their use cannot be said to be generally accepted.
The claim that the state has preempted the town from regulating the location of heliports is also unavailing. The standard applied under the statute is minimum standards of safety, leaving room for local regulation. Our Supreme Court has decided that "[n]owhere in [the statutory scheme addressing the licensing of privately owned air facilities, General Statutes §§ 13b-46 through 13b-49] is there any indication that the legislature intended to preempt the field of aeronautics with respect to private as opposed to state or municipally owned air facilities." Helicopter Associates, Inc. v. Stamford, supra,201 Conn. 707-08.
Turning to the merits of the town's claim, first the court will consider whether launching, landing or storing a helicopter in a residential zone violates the zoning ordinance. The zoning ordinance prescribes the permitted uses of land within a residential district in Chapter 9 which prefaces a list of uses with the statement: "The following uses are permitted in One Family Residential districts." Zoning Ordinance Section 9-1. As such, the zoning ordinance is an exclusive listing of permitted uses and all uses not listed are prohibited uses.
Neither the heliport nor helicopter is listed and thereby expressly permitted by the zoning ordinance. Zoning Ordinance Sections 9-1.1 through 9-1.12. The only applicable uses listed after the preface are a "bonafide farm operation" and an "accessory use," both defined terms of the zoning ordinance. Zoning Ordinance Sections 9-1.9 and 9-1.10. Therefore, launching and landing a helicopter in a residential district is only permitted if it is either a bonafide farm operation or an accessory use.
The ordinance defines a bonafide farming operation as agriculture, CT Page 6012 forestry, truck and nursery gardening greenhouses, livestock and poultry raising and daily farming, provided that all buildings designated for such use shall be built no less than 100 feet from the street line and not less than 100 feet from the nearest residential building on a lot under separate ownership. Zoning Ordinance Section 9-1.10.a. Bonafide farm operations also include buildings used for storage on the farm of any number of motor vehicles and equipment when such vehicles and equipment are used in connection with the operation of the farm are permitted as an accessory use. Zoning Ordinance Section 9-1.10.d. The zoning ordinance, however, does not specify what equipment may be stored or used on land used in a bona fide farming operation. Zoning Ordinance Sections 9-1.1 through 9-1.12. Since helicopters are not expressly permitted they are prohibited unless they are an accessory use of land used for a bona fide farming operation.
The zoning ordinance permits "accessory uses . . . customary and incidental to a permitted use on the premises. . . ." Zoning Ordinance Section 9-1.9. Thus, whether landing and launching a helicopter on residential property is an accessory use of land used for a bona fide farming operation turns on the definition of accessory use. The zoning ordinance defines accessory use in relevant part as the "subordinate use of a building customarily incident to and located on the same lot with the main use of the building." Zoning Ordinance Section 1-1. Use is defined as "the purpose for which land . . . is arranged, designed, or intended or for which . . . land . . . is or may be occupied or maintained." Zoning Ordinance Section 1-62. Courts have applied the same definition. An "accessory use" of property under a zoning law is a use which is "customarily incidental" to its principal or main use. Lawrencev. Zoning Board of Appeals, 158 Conn. 509, 511-12, 264 A.2d 552 (1969). In such a context, "[t]he word `incidental' . . . incorporates two concepts. It means that the use must not be the primary use of the property but rather one which is subordinate and minor in significance. . . . But `incidental' . . . must also incorporate the concept of reasonable relationship with the primary use. It is not enough that the use be subordinate; it must also be attendant or concomitant." Id., 512. The word "customarily," when used in the same context, requires that the use "be further scrutinized to determine whether it has commonly, habitually and by long practice been established as reasonably associated with the primary use." Id., 512-13. "Accessory uses are, by definition, uses located on the same lot, and must be subordinate and customarily incidental to, the principal use." (Internal quotation marks omitted.) OG Industries, Inc. v. Planning Zoning Commission, 232 Conn. 419, 421 n. 1,655 A.2d 1121 (1995); see also D J Quarry Products, Inc. v.Planning Zoning Commission, 217 Conn. 447, 456,585 A.2d 1227 (1991). The accessory use of farm land is therefore CT Page 6013 any common, habitual and longstanding use reasonably associated with farming on the particular parcel.
Helicopters are not commonly and habitually used on farms in Connecticut. The hearing clearly established that the use of a helicopter in a farming operation not only in Enfield but throughout the entire state of Connecticut is virtually unheard of. In support of its position, Enfield Shade introduced evidence that it is the only farmer in Connecticut that uses a helicopter in its farming operation. In fact, it introduced evidence of a study on the efficacy of applying pesticides to tobacco with a helicopter, the first phase of which was conducted at Enfield Shade because Enfield Shade was the only farm where a helicopter was used. Clearly, the use of a helicopter in the state is neither customary nor habitual. As it is not customary and habitual, it is not an accessory use to a farming operation, and, therefore, it is not a permitted use of land within an R-44 residential zone.
The court will next consider whether the launching and landing of a helicopter is a permissible use of property in an I-1 industrial zone.[2]
The permitted uses of land within an I-1 zone are specified in Article 12-3
of the zoning ordinance. It expressly provides that "uses specified in Sections 12-3.1.1 through 12-3.1.12 below may be permitted in accordance with Chapter 16 (entitled Special Permits — Site Review) . . . and all others are expressly prohibited." Zoning Ordinance Section 12-3.1.
Notwithstanding the clear language of the zoning ordinance, Enfield Shade insists that it is not required to obtain a special permit from the town to launch and land a helicopter in an I-1 industrial zone because that activity does not constitute the maintenance of a heliport. In support of its position, Enfield Shade relies on the definition of a heliport adopted by the general assembly which requires a designated area for landing and take-off. In particular, Enfield Shade argues that the definition of heliport contained in the general statutes must be applied in construing the zoning ordinance, which uses but does not define that term.
"Statutory construction is a question of law. . . ." (Internal quotation marks omitted.) Prioli v. State Library, 64 Conn. App. 301,307, 780 A.2d 172, cert. denied, 258 Conn. 917, 782 A.2d 1246 (2001). The fundamental objective of the court in statutory construction is to determine and give effect to the legislative intent. Id.; Burke v. FleetNational Bank, 252 Conn. 1, 11, 742 A.2d 293 (1999). A zoning regulation "is a local legislative enactment." Spero v. Zoning Board of Appeals,217 Conn. 435, 441, 586 A.2d 590 (1991). Thus, it is the intent of the town and not the general assembly that is germane to an interpretation of the zoning ordinance. CT Page 6014
Words used by the legislative body are given their common sense meaning and must lead to a rational result. Id. It naturally follows, therefore, that "[o]rdinarily, this court affords deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes." (Internal quotation marks omitted.) Wood v.Zoning Board of Appeals, 258 Conn. 691, 784 A.2d 354 (2001). One of the plaintiffs in this case is the town's zoning enforcement officer who, as stated above, is empowered to carry out the purpose of and enforce the zoning ordinance. He asserts that the general assembly's definition of heliport does not apply.[3]
In addition, applying the statutory definition to the zoning ordinance would lead to an irrational result. Under that definition, in order to be a heliport, there must be a designated place to land and launch the helicopter. Applying that definition, a landowner could evade the requirement of getting a special permit by simply not designating a specific place to launch and land the helicopter and by launching and landing the helicopter from and on different places on the property. The zoning commission of the town is required to take into consideration public health, safety and welfare, the confirm and the convenience of the public in general and the raiments of the immediate neighborhood in particular and attach reasonable conditions and safeguards. Zoning Ordinance Section 16-7. The failure to designate a place for launching and landing the helicopter would deprive the zoning commission of the opportunity to consider and impose reasonable safeguards for the public health, safety and welfare, and community confirm and the convenience as the zoning ordinance clearly intends.
Application of the common sense meaning of the term heliport is found in Webster's Third International Dictionary would further that end. There the term heliport as defined as "a landing and take-off place for helicopters." This is also the definition asserted by the town's zoning enforcement officer, and, under that definition, any parcel from or on which the helicopter was launched or landed would be a heliport. Applying that definition, the court finds that the defendants were operating a heliport without a special permit in an industrial zone in violation of the zoning ordinance. In proper deference to the legislative body which enacted the zoning ordinance and to prevent the obfuscation of the zoning ordinance, the court rejects the defendants' assertion that they are not operating a heliport because they have not desegrated a place to launch and land the helicopter. Accordingly, the court finds that the defendants are in violation of the zoning ordinance by launching and landing a helicopter in an industrial zone.
In balancing the equities the court must consider the gravity and CT Page 6015 wilfulness of the violation, and the potential harm to the defendants. There have been no dangerous incidents involving the helicopter, and the plaintiffs have not claimed nor introduced any evidence to support a claim that the activity is inherently dangerous. Therefore, the gravity of the violation is not great. The defendants have failed to support their legal claims with persuasive precedent, however its arguments are not specious. Moreover, citizens have a constitutional right of petition.Eastern Railroad Presidents Conference v. Noerr Motor Freight,365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464, reh. denied, 365 U.S. 875,81 S.Ct. 899, 5 L.Ed.2d 864 (1961); United Mine Workers v. Pennington,381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965); California MotorTransport Co. v. Trucking Unlimited, 404 U.S. 508, 92 S.Ct. 609,30 L.Ed.2d 642
(1972). Zeller, Et Al. v. Consolini, et al., 59 Conn. App. 545,758 A.2d 376 (2000). While the defendants did not initiate this action, it appears that the parties had a genuine difference of opinion and agreed that the dispute could only be resolved by an independent arbiter. The defendants have asserted that the inconvenience and expense of initiating their helicopter spraying activities from an area heliport and the speculative advantages to helicopter application of pesticide over conventional methods of application. These reasons do not tip the scale of equity in the defendants' favor, warranting the court to deny the plaintiffs' application for an injunction.
Accordingly, the plaintiffs' application for an injunction is granted, and the defendants are hereby enjoined from landing or launching a helicopter in a R-44 residential zone within the town of Enfield and further enjoined from landing or launching a helicopter in an I-1 industrial zone without a permit within the town of Enfield.
_______________ Bryant, J.